UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-81016-CIV-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

      Plaintiff,

v.

NATIONAL ASSOCIATION OF
REALTORS®, et al.,

      Defendants.

_____/

**DEFENDANTS CONNECTICUT ASSOCIATION OF REALTORS®, WEST AND SOUTHEAST REALTORS® OF THE VALLEY, AND SMART MLS, INC.'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS* AND SUPPORTING MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1
II. SUMMARY OF ALLEGATIONS ........................................................................................2
III. LEGAL STANDARD............................................................................................................4
IV. ARGUMENT.........................................................................................................................5
    A. THE FLORIDA LONG ARM STATUTE DOES NOT CONFER PERSONAL JURISDICTION OVER THESE DEFENDANTS BECAUSE THEY LACK THE REQUIRED MINIMAL CONTACTS WITH FLORIDA..............................6
        1. Plaintiff Cannot Establish *General* Jurisdiction over CT REALTORS®, Smart MLS, or WeSERV................................................................... 6
        2. Plaintiff Cannot Establish *Specific* Personal Jurisdiction over CT REALTORS®, Smart MLS, or WeSERV............................................ 7
        3. Exercising Personal Jurisdiction Over CT REALTORS®, Smart MLS, and WeSERV Would Violate Defendants' Due Process Rights ................ 9
    B. THE CLAYTON ACT DOES NOT CONFER PERSONAL JURISDICTION OVER THESE DEFENDANTS FOR THE SAME REASONS ...........................10
    C. PLAINTIFF'S SELECTION OF A CONNECTICUT FORUM IN HIS SMART MLS AGREEMENT REQUIRES DISMISSAL ...................................11
V. CONCLUSION....................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AQuate II LLC v. Myers*,
  100 F.4th 1316 (11th Cir. 2024) .................................................................................11, 14

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*,
  571 U.S. 49 (2013) ............................................................................................................11

*Bense v. Interstate Battery Sys. of Am., Inc.*,
  683 F.2d 718 (2d Cir. 1982) .............................................................................................14

*Carmouche v. Tamborlee Mgmt., Inc.*,
  789 F.3d 1201 (11th Cir. 2015) ........................................................................................10

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ..........................................................................................................12

*Crowe v. Paragon Relocation Res., Inc.*,
  506 F. Supp. 2d 1113 (N.D. Fla. 2007) ..............................................................................5

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................................5

*Gerow v. Newsom*,
  No. 22-cv-2976, 2024 U.S. Dist. LEXIS 137354 (M.D. Fla. Aug. 2, 2024) .....................8

*Gilmer v. Bureau Veritas Commodities & Trade*,
  No. 20-cv-61408, 2021 WL 3772137 (S.D. Fla. Apr. 20, 2021) .......................................4

*Golf City, Inc. v. Wilson Sporting Goods Co.*,
  555 F.2d 426 (5th Cir. 1977) .............................................................................................8

*Grape Stars Int'l, Inc. v. nVentive, Inc.*,
  2020 WL 4586123 (S.D. Fla. Aug. 10, 2020) ..................................................................11

*In re Blue Cross Blue Shield Antitrust Litig.*,
  26 F. Supp. 3d 1172 (N.D. Ala. 2014) .............................................................................10

*In re Ricoh Corp.*,
  870 F.2d 570 (11th Cir. 1989) ..........................................................................................12

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019) .........................................................................10, 11

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013) ................................................................................14

*Lightning Partners, Inc. v. SPS Com., Inc.*,
  2022 WL 485228 (M.D. Fla. Feb. 17, 2022) ..................................................................14

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ............................................................................................................12

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) .................................................................................9, 10

*Meier v. Sun Int'l Hotels, Ltd.*,
  288 F.3d. 1264 (11th Cir. 2002) .......................................................................................4

*Melgarejo v. Pycsa Pan., S.A.*,
  537 F. App'x 852 (11th Cir. 2013) ..................................................................................7

*MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*,
  No. 20-21573, 2021 WL 355133 (S.D. Fla. Feb. 2, 2021) ..............................................6

*Person v. Google Inc.*,
  456 F. Supp. 2d 488 (S.D.N.Y. 2006) .............................................................................14

*Peruyero v. Airbus S.A.S.*,
  83 F. Supp. 3d 1283 (S.D. Fla. 2014) ..............................................................................7

*Red Dragon Partners, LLC v. TruthMD, LLC*,
  No. 23-cv-60093, 2024 WL 1531623 (S.D. Fla. Mar. 1, 2024) ....................................13

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ......................................................................................11

*Smith v. Oasis Legal Fin., LLC*,
  No. 17-cv-2163, 2017 WL 4922271 (M.D. Fla. Oct. 31, 2017) ....................................13

*Stiles v. Bankers Healthcare Grp., Inc.*,
  637 F. App'x 556 (11th Cir. 2016) ................................................................................13

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948) .......................................................................................................10

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) .......................................................................................4

*Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*,
  No. 17-cv-60120, 2017 WL 6313937 (S.D. Fla. Dec. 6, 2017) ......................................4

## STATUTES AND RULES

15 U.S.C. § 22 ...................................................................................................................10

Fla. Stat. Ann. § 48.193 ...............................................................................................5, 6, 7

## MISCELLANEOUS

August 2024 Smart MLS Participation Agreement
   https://smartdesk.smartmls.com/hc/article_attachments/28296008080667 ...........................12

Defendants Connecticut Association of REALTORS®, Inc. ("CT REALTORS®"), West and Southeast REALTORS® of the Valley, Inc. ("WeSERV"), and Smart MLS, Inc. ("Smart MLS"), move to dismiss Plaintiff's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under the doctrine of *forum non conveniens*.[1]

**I.    INTRODUCTION**

Plaintiff, a real estate broker in Florida, brings antitrust claims in his individual capacity against seventeen real estate industry associations and MLSs. Three of these entities have no connection to Florida whatsoever—WeSERV, Smart MLS, and CT REALTORS®. Plaintiff's allegations about WeSERV, Smart MLS, and CT REALTORS®' involvement in Plaintiff's alleged conspiracy are vague and fail to adequately establish personal jurisdiction.

The extent of Plaintiff's personal jurisdiction assertions against WeSERV and CT REALTORS® are based only what he describes as a "Connecticut ethics matter." Compl. ¶ 82. The Complaint lacks any facts on the "ethics matter," but even if plead, such facts are insufficient to confer personal jurisdiction. These two "ethics matters" were isolated resolutions of ethics complaints, both of which Plaintiff lodged *in Connecticut* against *Connecticut* real estate professionals, regarding property listed for sale *in Connecticut*. One of these matters was transferred for adjudication to WeSERV *in Arizona*, while the other was resolved by CT REALTORS® *in Connecticut*. Declaration of Cynthia Butts ("Butts Decl.") ¶¶ 7–8, 13; Declaration of Roger Nelson ("Nelson Decl.") ¶¶ 7–8. None of the alleged conduct occurred in Florida or related to Florida property.

And the Complaint's personal jurisdiction allegations against Smart MLS are equally

---

[1] CT REALTORS®, WeSERV, and Smart MLS also join Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 59).

1

insufficient. The Complaint contains only one factual allegation specific to Smart MLS—that it had not yet adopted a version of the IDX display rule (Compl. ¶¶ 247 n.36, 268–272)—and instead alleges violations by "all Defendants" generally. *Id.* ¶ 378.

Indeed, these three out-of-state entities' only role in this action relates to actions outside of Florida. None of these actions comprise contact with Florida at all, to say nothing of contact sufficient to confer personal jurisdiction under either Florida's long-arm statute or the Clayton Act.

In addition, the Complaint should be dismissed as to Smart MLS for *forum non conveniens*. Plaintiff's Participation Agreement with Smart MLS to access the multiple listing service contains a forum selection clause in which Plaintiff agreed to submit "all matters relating to or arising from this Agreement" "to the jurisdiction of courts located in the state of Connecticut" because "by providing listings to [Smart] MLS and using the services provided under the [Participation] Agreement," Plaintiff "transacted business in the State of Connecticut." Declaration of Kathy Elson ("Elson Decl."), Exhibit A (Smart MLS Participation Agreement § 24(b)).

Accordingly, this Court should dismiss the Complaint against WeSERV and CT REALTORS® for lack of personal jurisdiction, and against Smart MLS for both lack of personal jurisdiction and *forum non conveniens*.

## II.  SUMMARY OF ALLEGATIONS

Though the Complaint spans 126 pages, Plaintiff's allegations specific to CT REALTORS®, Smart MLS, and WeSERV are sparse. WeSERV is a non-profit corporation organized under the laws of the State of Arizona, with its principal place of business located in Chandler, Arizona. Compl. ¶ 45. Smart MLS is a non-stock corporation organized under the laws of the State of Connecticut, with its principal place of business in Milford, Connecticut. *Id.* ¶ 43. CT REALTORS® is a non-stock corporation organized under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut. Butts Decl. ¶ 2.

2

Plaintiff makes no factual allegations specific to CT REALTORS®, Smart MLS, or WeSERV suggesting that they entered a conspiracy or an agreement to not enforce certain rules.

The only alleged conduct concerning CT REALTORS® and WeSERV relates to "a Connecticut ethics matter," presumably pursuant to the NAR Code of Ethics. Compl. ¶ 82. Plaintiff provides no factual allegations about the nature of the complaint, how or when it was lodged, against whom, where, when, or how. But even if alleged, those facts would not establish personal jurisdiction. Plaintiff's "Connecticut ethics matter" could only mean one or both of two incidents, neither of which bear any connection to Florida.

First, in September 2024, Plaintiff reached out to CT REALTORS® to inquire about the appropriate body with which he could file an ethics complaint about the conduct of a Connecticut-based real estate agent relating to the sale of a property in Hartford, Connecticut. Butts Decl. ¶¶ 7, 10. That real estate agent was also a member of the Sarasota Association of REALTORS®. *Id.* Plaintiff filed his ethics complaint with CT REALTORS® on September 17, 2024. *Id.* ¶ 9. CT REALTORS® entered into a cooperative agreement with WeSERV, in Arizona, in which WeSERV would administer Plaintiff's ethics complaint. *Id.* ¶ 11; Nelson Decl. ¶ 8. Such agreements between REALTORS® Associations are common and are entered into to manage case flow, and as the need arises. Butts Decl. ¶ 12.

Plaintiff asserts that WeSERV is subject to specific personal jurisdiction in Florida because it "unilaterally assumed jurisdiction over an ethics complaint against Plaintiff, a known Florida resident," which Plaintiff erroneously characterizes as an "intentional act expressly aimed at this state." Compl. ¶ 14. Plaintiff acknowledges that WeSERV is responsible for enforcement of the NAR Code of Ethics upon "its Arizona members; with no geographic overlap or service or membership relation with Plaintiff." *Id.* ¶ 82.

3

Second, in December 2024, Plaintiff lodged a new ethics complaint with CT REALTORS® against a different Connecticut REALTOR®. Butts Decl. ¶ 13. In this ethics complaint, Plaintiff alleged that a REALTOR® steered his clients away from one of Plaintiff's listings in Preston, Connecticut, allegedly because Plaintiff did not offer the sought for compensation to the buyer's agent. *Id*.

The Complaint contains no purported personal jurisdiction allegations about CT REALTORS® or Smart MLS.

### III.   LEGAL STANDARD

A plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (affirming dismissal of a defendant for lack of personal jurisdiction where jurisdictional affidavit offered specific and factual denials to plaintiff's claimed jurisdictional bases).

"In evaluating a motion to dismiss premised on a lack of personal jurisdiction, the Court is permitted to consider materials outside the pleadings." *Wertheim Jewish Educ. Tr., LLC v. Deutsche Bank AG*, No. 17-cv-60120, 2017 WL 6313937, at *7 (S.D. Fla. Dec. 6, 2017). "Where [] the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *United Techs. Corp.*, 556 F. 3d at 1274 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d. 1264, 1269 (11th Cir. 2002)). "If the parties' supplemental evidence conflict, courts must construe all reasonable inferences in favor of the plaintiff." *Gilmer v. Bureau Veritas Commodities & Trade*, No. 20-cv-61408, 2021 WL 3772137, at *1–2 (S.D. Fla. Apr. 20, 2021) (holding that the defendant was not subject to personal jurisdiction where the defendant's exhibits established that its operations in Florida were not so substantial so as to characterize it at home, and the plaintiff did not counter the defendant's proffered evidence).

## IV.     ARGUMENT

This Court cannot assert general jurisdiction over any of the Defendants, as non-Florida residents. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding a corporation is subject to general jurisdiction only in two places: the "place of incorporation and principal place of business"); Compl. ¶ 42 (CT REALTORS® is a corporation organized and existing under the laws of Connecticut, with its headquarters in Connecticut); *id.* ¶ 43 (Smart MLS is a corporation organized and existing under the laws of Connecticut, with its headquarters in Milford, Connecticut); *id.* ¶ 45 (WeSERV is a corporation organized and existing under the laws of Arizona, with its headquarters in Chandley, Arizona).

Therefore, for this Court to exercise personal jurisdiction over CT REALTORS®, Smart MLS, and WeSERV, Plaintiff must establish specific personal jurisdiction under either Florida's long-arm statute or the Clayton Act.

Plaintiff fails to carry his initial burden of establishing specific personal jurisdiction over any of these three Defendants because he does not allege any facts sufficient to make a prima facie case for personal jurisdiction. Plaintiff does not even cite or mention either the Clayton Act or Florida's long-arm statute (Fla. Stat. Ann. § 48.193) as a basis for the exercise of personal jurisdiction, which itself calls into question whether jurisdiction over the out of state defendants exists. *See Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1119, n.12 (N.D. Fla. 2007) (finding it arguable whether the plaintiff's complaint alleged sufficient facts to establish personal jurisdiction under Florida's long-arm statute where the complaint did not cite the section of the statute under which jurisdiction was conferred, but finding the court did not have personal jurisdiction over the defendant on other grounds).

5

A.  **THE FLORIDA LONG ARM STATUTE DOES NOT CONFER PERSONAL JURISDICTION OVER THESE DEFENDANTS BECAUSE THEY LACK THE REQUIRED MINIMAL CONTACTS WITH FLORIDA**

Personal jurisdiction under Florida's long-arm statute can be established two ways: (1) by Plaintiff demonstrating that the defendant is subject to general personal jurisdiction in Florida (Fla. Stat. § 48.193(2)); or (2) by demonstrating specific personal jurisdiction in Florida (Fla. Stat. § 48.193(1)). In addition, personal jurisdiction can only be conferred pursuant to Florida's long-arm statute if it comports with Defendants' due process rights under the Fourteenth Amendment.

1.  **Plaintiff Cannot Establish *General* Jurisdiction over CT REALTORS®, Smart MLS, or WeSERV**

General jurisdiction is found where a defendant is "engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise . . . whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Plaintiff's allegations do not establish *any* connection to the State of Florida, let alone "substantial" and "continuous activity" sufficient to confer jurisdiction under Fla. Stat. § 48.193(2).

Plaintiff's bald conclusion that Defendants "participate in, enforce, or benefit from a coordinated framework of mandatory rules, policies, and compliance structures that collectively restrain trade and distort market competition" does not meet this standard. Compl. ¶ 12. The nationwide scope of the NAR Code of Ethics is irrelevant to whether the Connecticut organizations are "engaged in substantial and not isolated activity" in Florida, especially when the two enforcement actions at issue took place out of state. *MSP Recovery Claims Series, LLC v. Nationwide Mut. Ins. Co.*, No. 20-cv-21573, 2021 WL 355133, at *3–4 (S.D. Fla. Feb. 2, 2021) (granting motion to dismiss for lack of personal jurisdiction where the plaintiffs merely pointed to the "ubiquity of the [defendants'] brand across the country" and failed to show that defendants

were "at home" or "operating, conducting, or carrying on a business venture in" Florida (citation modified)).  Based in Arizona and Connecticut, Defendants are clearly not "at home" in Florida.

        **2.**      **Plaintiff Cannot Establish *Specific* Personal Jurisdiction over CT REALTORS®, Smart MLS, or WeSERV**

Under Florida's long-arm statute, Florida courts have specific personal jurisdiction over a non-resident if the asserted cause of action "arises from" that defendant's "conducting" or "carrying on" a business in Florida or having "an office or agency" in Florida.  Fla. Stat. § 48.193(1)(a)(1); *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (affirming dismissal because employer's use of affiliate's Florida office did not establish the sort of "general course of business activity" necessary for personal jurisdiction and even though the employer did conduct some business through the affiliate's office, there was nothing in the record linking those business operations with the employee's cause of action).  "The long-arm statute must be strictly construed; therefore, any doubts about the applicability of the statute must be resolved in favor of the defendant and against a conclusion that jurisdiction exists."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1289 (S.D. Fla. 2014) (holding no specific personal jurisdiction existed over an out-of-state corporation where the plaintiff failed to show that the corporation conducted business in Florida).

Nowhere in the Complaint does Plaintiff allege that his claims arose from the Defendants' connection with Florida, or, indeed, that CT REALTORS®, WeSERV, or Smart MLS has "conducted" or "carried on" business in the state.  In fact, Plaintiff pleads the opposite: that CT REALTORS® holds statewide ethics enforcement authority for its Connecticut-based members (Compl. ¶ 81); that Smart MLS, a "local Defendant," is "the only statewide MLS and IDX feed source" in Connecticut (*id.*);  and that WeSERV is "[b]ased in Arizona" and has "no geographic overlap or service or membership relation with Plaintiff" in Florida (*id*. ¶¶ 14, 82).  Indeed, the

7

conduct at the center of the claims against CT REALTORS® and WeSERV did not take place in or target the State of Florida at all. The ethics adjudication at issue was against a Connecticut-based broker, involved the sale of a property located in Hartford, Connecticut, and was initially submitted to CT REALTORS® for adjudication. *See supra* at 3–4.

Plaintiff bases his personal jurisdiction assertions on the allegation that WeSERV's handling of a Connecticut ethics complaint against Plaintiff was "extraterritorial adjudication [that] was necessarily felt in Florida" by virtue of involving Plaintiff. Compl. ¶ 14. But, that Plaintiff is a resident of this District is not a basis for jurisdiction absent specific allegations of how the out-of-state defendants targeted their actions towards this state. *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 437–38 (5th Cir. 1977) ("[A] professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there.").

And while Plaintiff states that "some defendants operate directly within Florida's residential real estate market" and that "[o]thers, though based outside Florida, have purposefully directed conduct at Plaintiff through service, rulemaking, communications, and regulatory proceedings that materially affected Plaintiff's business within this district," this vague allegation does not support a finding of personal jurisdiction against the moving Defendants. Compl. ¶ 13. Smart MLS provides information to real estate professionals about properties in Connecticut, not Florida. Elson Decl. ¶ 3. It is not sufficient to generally plead that "some defendants" are subject to jurisdiction based on specific conduct without specifying which defendants partook in which actions, and how that conduct arises from activity in the state of Florida. *Gerow v. Newsom*, No. 22-cv-2976, 2024 U.S. Dist. LEXIS 137354, at *16–17 (M.D. Fla. Aug. 2, 2024) (finding no personal jurisdiction over out-of-state defendants where the plaintiff failed to make specific

allegations to establish jurisdiction and instead relied on allegations making general reference to all defendants in the complaint).

And in addition, for Smart MLS, Plaintiff fails to make any specific claims and instead generally alleges group conduct based on Smart MLS' adoption of NAR rules. Compl. ¶¶ 377, 414, 424, 436. This is insufficient to establish that Smart MLS "conducted" or "carried on" business in Florida, when Plaintiff admits Smart MLS operates a real estate listing service in Connecticut for properties in Connecticut. Indeed, Plaintiff agreed as part of his Participation Agreement with Smart MLS that by listing property in Connecticut, he was "transact[ing] business in the state of Connecticut." Elson Decl. Ex. A, § 24(b). Plaintiff's threadbare allegations and general claims are insufficient to satisfy specific personal jurisdiction over CT REALTORS®, Smart MLS, or WeSERV in Florida.

Because the allegations do not arise from any conduct of the moving Defendants in this state, this Court cannot exercise personal jurisdiction over these Defendants.

### 3. Exercising Personal Jurisdiction Over CT REALTORS®, Smart MLS, and WeSERV Would Violate Defendants' Due Process Rights

Even if the Court proceeded to a due process analysis, (1) Defendants do not have minimum contacts with Florida and (2) the court's exercise of jurisdiction over the moving Defendants would violate "traditional notions of fair play and substantial justice." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (internal citations and quotation marks omitted). Each of these three Defendants engaged in conduct outside of Florida. None would have had "fair warning" that their activities may subject them to jurisdiction of a foreign state. *Id.* Plaintiff points to no evidence that these Defendants "purposefully directed" activities toward Florida such that they may reasonably anticipate being hailed into this Court. *Id.* ("Jurisdiction as a result of random, fortuitous, or attenuated contacts" are insufficient to create minimum contacts with the forum.).

9

Furthermore, requiring these non-resident Defendants to litigate in this forum would be burdensome (their officers and witnesses are not located here) and the Florida court has little interest in adjudicating this action since the allegations against CT REALTORS®, Smart MLS, and WeSERV did not occur in the State of Florida. *Id.* at 1519. Because this Court does not have jurisdiction under the Florida long-arm statute, any exercise of personal jurisdiction over these Defendants would also exceed constitutional bounds. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

## B. THE CLAYTON ACT DOES NOT CONFER PERSONAL JURISDICTION OVER THESE DEFENDANTS FOR THE SAME REASONS

Plaintiff also cites 15 U.S.C. § 22 (Compl. ¶¶ 10–11)—the provision of the Clayton Act that provides for nationwide service of process for Sherman Act claims—which provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought . . . in any district wherein it may be found or transacts business." But as with the analysis under traditional personal jurisdiction principles, the moving Defendants are not "found" and do not "transact[] business" in this District within the meaning of the statute. *See In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1194–1196 (N.D. Ala. 2014) (following "majority view" that 15 U.S.C. § 22 creates personal jurisdiction only if plaintiffs satisfy its venue provision).

As the Supreme Court recognized, "transacts business" should be construed as "the practical, everyday business or commercial concept of doing or carrying on business of any substantial character." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (citation modified); *see also In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 230–31 (S.D.N.Y. 2019) (holding "minimal allegations" of transacting business insufficient to establish venue). "For a defendant to transact business of a substantial character there must be some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular

10

judicial district." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. at 230 (citation modified).  No Defendant has an office in the state of Florida or conducts any business or transactions in the state of Florida.  Butts Decl. ¶¶ 3–5; Nelson Decl. ¶¶ 3–5.  Nor does Plaintiff allege that they do.  *See* above, Section II.  An exercise of jurisdiction pursuant to the Clayton Act would be inappropriate here, where neither Defendant is alleged to have conducted any business in the State.

### C. PLAINTIFF'S SELECTION OF A CONNECTICUT FORUM IN HIS SMART MLS AGREEMENT REQUIRES DISMISSAL

If the court finds lack of personal jurisdiction, the court need not reach this *forum non conveniens* argument.  *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1231 (11th Cir. 2023).  Another basis for dismissal of Smart MLS, however, is the doctrine of *forum non conveniens* because Plaintiff's Smart MLS agreement requires resolution in Connecticut courts of all matters arising from a participant's Smart MLS Connecticut listings.

The appropriate way to enforce a forum-selection clause pointing to a state forum is dismissal for *forum non conveniens.  Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013).  The clause is "given controlling weight in all but the most exceptional cases."  *Id.*  A court facing a motion to dismiss for *forum non conveniens* considers "arguments about the public interest, including considerations like the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.  These factors, though, rarely defeat a [] motion—the forum-selection clause will almost always control."  *AQuate II LLC v. Myers*, 100 F.4th 1316, 1322 (11th Cir. 2024) (citation modified).

Additionally, where a valid forum-selection clause applies, "the Court will not consider the parties' private interests in evaluating the Motion."  *Grape Stars Int'l, Inc. v. nVentive, Inc.*, No. 20-cv-20634, 2020 WL 4586123, at *11 (S.D. Fla. Aug. 10, 2020).  Instead, the plaintiff "bears

11

the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The plaintiff must make a "strong showing" that enforcement would be unfair or unreasonable under the circumstances. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Here, Plaintiff cannot, and his agreement to submit all matters relating to or arising from his participation in Smart MLS to courts in Connecticut justifies dismissal of this action for the following reasons.

*First*, in August 2024, to use Smart MLS's multiple listing service for properties in Connecticut, Plaintiff agreed to a Participation Agreement with a forum-selection clause. Elson Decl. ¶ 8. In Section 24(b) on "Governing Law; Submission to Jurisdiction," Plaintiff agreed that "by providing Listings to MLS and using the services provided under this Agreement, Participant has transacted business in the state of Connecticut." Elson Decl. Ex. A § 24(b).[2] Plaintiff also agreed that "[b]y transacting business in the state of Connecticut by agreement, Participant voluntarily submits and consents to, and waives any defense to the jurisdiction of courts located in the state of Connecticut, as to all matters relating to or arising from this Agreement." *Id*. Plaintiff's selection of a Connecticut forum is presumptively valid and enforceable. *Carnival Cruise Lines*, 499 U.S. at 593–95.

Specifically, Plaintiff's claims against Smart MLS arise out of a dispute over his apparent listing of properties in Connecticut through his participation in Smart MLS's listing service. Plaintiff contends that he is a "participant . . . bound by the policies and enforcement of" Smart

---

[2] The August 2024 Smart MLS Participation Agreement is publicly available at: https://smartdesk.smartmls.com/hc/article_attachments/28296008080667.

MLS, and that the "non-enforcement" of NAR's rules by Smart MLS in Connecticut somehow violate the antitrust laws (Compl. ¶¶ 46, 268–72).

Based on these allegations, Plaintiff's claims as to Smart MLS relate to his listing of properties on Smart MLS's listing service in Connecticut through his Participation Agreement and, therefore, fall squarely within the scope of the forum-selection clause. As a result, this case should have been brought in a court in Connecticut. *See Red Dragon Partners, LLC v. TruthMD, LLC*, No. 23-cv-60093, 2024 WL 1531623, at *6 (S.D. Fla. Feb. 29, 2024) (granting dismissal because "the forum selection clause does not mandate a federal forum, but instead the option of either a state court or federal court in Delaware"); *Smith v. Oasis Legal Fin., LLC*, No. 17-cv-2163, 2017 WL 4922271, at *3 (M.D. Fla. Oct. 31, 2017) (dismissing case for *forum non conveniens* and enforcing forum selection clause which required litigation in Illinois state court).

*Second*, the public interest weighs in favor of a Connecticut forum. This Court has no interest in adjudicating this case, where the alleged conduct by Smart MLS relates exclusively to property listed for sale in Connecticut and rules applicable in Connecticut to the transaction of that property. If these issues are to be litigated, they should occur in a forum where the controversies are "at home," and where the forum-selection clause requires. *See, e.g.*, *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (affirming dismissal of case and finding that "the administrative difficulties flowing from court congestion and the local interest in having localized controversies decided at home" were properly weighed and no extraordinary circumstance overrode valid selection of New York or Florida venues (citation modified)); *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 705 (11th Cir. 2018) (affirming the district court's dismissal for *forum non conveniens* based on a valid clause selecting Pennsylvania forum and appropriate lack of weight to plaintiff's lawsuit venue or private interests).

*Third*, there is no extraordinary circumstance requiring the case to be litigated in this forum. *See AQuate II LLC*, 100 F.4th at 1322 ("These clauses should be given controlling weight in all but the most exceptional cases." (citation modified)). Plaintiff does not face undue inconvenience or prejudice because he is engaged in listing and selling residential properties in Connecticut. Compl. ¶ 46. Connecticut courts adjudicate antitrust disputes, and courts apply forum selection clauses in antitrust cases. *See, e.g.*, *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720–21 (2d Cir. 1982) (affirming dismissal of antitrust suit filed in Vermont by applying forum-selection clause's choice of Dallas County, Texas); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 857 & n.12 (D. Md. 2013) (noting that "courts have enforced forum selection clauses in antitrust cases" and dismissing claims of multiple plaintiffs with forum selection clauses); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 497 (S.D.N.Y. 2006) (enforcing clause selecting California where plaintiff did not show "that the forum selection clause at issue in this case tends to subvert the purpose of federal antitrust enforcement"). As a result, Plaintiff's forum selection of Connecticut in his agreement with Smart MLS merits dismissal of this action against Smart MLS under the doctrine of *forum non conveniens*. *See Lightning Partners, Inc. v. SPS Com., Inc.*, No. 21-cv-399, 2022 WL 485228, at *4 (M.D. Fla. Feb. 17, 2022) (dismissing case based on *forum non conveniens* grounds and enforcing Minnesota forum selection).

## V. CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice, in its entirety, against Defendants CT REALTORS®, WeSERV, and Smart MLS.

Dated:  October 8, 2025

Respectfully Submitted,

**WHITE & CASE LLP**

*/s/ Zachary B. Dickens*
Zachary B. Dickens
Florida Bar No. 98935

Southeast Financial Center
200 South Biscayne Blvd., Ste. 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: zdickens@whitecase.com

*Counsel for Defendants Connecticut Association of REALTORS®, Inc. and West and Southeast REALTORS® of the Valley, Inc.*

**MANATT, PHELPS & PHILLIPS, LLP**

*/s/ Bezalel Adin Stern*
Bezalel Adin Stern
Florida Bar No. 110447
Dylan M. Carson (*pro hac vice*)
1050 Connecticut Ave NW
Ste 600
Washington, DC 20036
Telephone: 301-922-5039
E-mail: bstern@manatt.com
E-mail: dcarson@manatt.com

Annie K. Nguyen (*pro hac vice*)
7 Times Square
New York, NY 10036
Telephone: (212) 790-4500
Email: anguyen@manatt.com

*Counsel for Defendant Smart MLS, Inc.*