UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-81016-CIV-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

    Plaintiff,

vs.

NATIONAL ASSOCIATION OF
REALTORS®, et al.,

    Defendants.

_____/

**DECLARATION OF KATHY ELSON IN SUPPORT OF
DEFENDANT SMART MLS, INC.'S MOTION TO DISMISS THE
COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND
FORUM NON CONVENIENS AND SUPPORTING MEMORANDUM OF LAW**

I, Kathy Elson, do hereby declare and state as follows:

    1.    I am the Chief Executive Officer at the Smart MLS ("Smart MLS"). I have personal knowledge of the facts contained herein, and if called as a witness, I could and would testify competently thereto.

    2.    Smart MLS is a non-stock corporation organized under the laws of the State of Connecticut. Smart MLS' principal place of business is located at 55 Old Gate Lane, Milford, Connecticut 06460.

    3.    Smart MLS provides an online multiple listing service to 20,000 subscribers and provides proprietary information on properties listed for sale within Connecticut.

    4.    A multiple listing service ("MLS") is a private database that is created, maintained, and paid for by real estate professionals to help their clients buy and sell property. An MLS allows agents to efficiently see homes for sale and get helpful marketplace data, which provides a single

location where buyers (through their agents) can search available listings and sellers (through their agents) can publicize their property to a large number of buyers. Because of the efficiency of the system, the vast majority of real estate transactions take place through an MLS.

**I.      Smart MLS Participation Agreement**

5.      Smart MLS's subscribers are residential and commercial real estate brokers, agents, salespeople, property managers, appraisers, counselors, and others engaged in the real estate industry that are affiliated with a participant. Participants are the principal brokers or owners of a real estate firm. Subscribers only gain access to the MLS through their participant's agreement with Smart MLS.

6.      To access the MLS, all Smart MLS participants must agree to a Participation Agreement. The Participation Agreement governs the terms of their access to and use of Smart MLS's services and includes a clause in Section 24(b) regarding "Governing Law; Submission to Jurisdiction." A true and correct copy of the Participation Agreement effective in August 2024 is attached hereto as "**Exhibit A**."

7.      Jorge A. Zea, through his firm Blue Lighthouse Realty, has been a participant in Smart MLS since Smart MLS's inception in 2017.

8.      On August 16, 2024, Plaintiff assented to the Participation Agreement. A true and correct copy of a screenshot of Smart MLS's database recording Plaintiff's assent to the Participation Agreement in August 2024 is attached hereto as "**Exhibit B**."

**II.     National Association of REALTORS® Rules**

9.      Smart MLS's subscribers are required to be National Association of REALTORS® (NAR) members and are obligated to comply with NAR rules.

2

10. I have reviewed the 2025 NAR Handbook on Multiple Listing Services ("NAR Handbook") and identified what Plaintiff has defined as the NAR IDX display rule, buyer-broker agreement rule, and non-filtering rule. These are the only rules Plaintiff alleges Smart MLS has not adopted in Plaintiff's Motion for Preliminary Injunction. ECF No. 8. I have included the current versions of these rules below:

a. **IDX Display Rule:** Plaintiff cites the following Policy Statement: "An MLS Participant's IDX display must identify the listing firm, and the email or phone number provided by the listing Participant in a reasonably prominent location and in a readily visible color and typeface not smaller than the median used in the display of listing data." (Policy Statement 7.58). The NAR rule that corresponds with this Policy Statement is Section 18.2.12 of the NAR Handbook.

b. **Buyer-Broker Agreement Rule:** Plaintiff cites the following Policy Statement: "Unless inconsistent with state or federal law or regulation, all MLS Participants working with a buyer must enter into a written agreement with the buyer prior to touring a home. The written agreement must include:

  i. a specific and conspicuous disclosure of the amount or rate of compensation the Participant will receive or how this amount will be determined, to the extent that the Participant will receive compensation from any source;

  ii. the amount of compensation in a manner that is objectively ascertainable and not open-ended;

  iii. a term that prohibits the Participant from receiving compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer; and

        iv. a conspicuous statement that broker fees and commissions are not set by law and are fully negotiable." (Policy Statement 8.13).  The NAR rule that corresponds with this Policy Statement is Section 5.0.2 of the NAR Handbook.

    c. **Non-filtering Rule:** Plaintiff cites the following Policy Statement: "MLS Participants and Subscribers must not, and MLSs must not enable the ability to, filter out or restrict MLS listings that are communicated to consumers or clients based on the existence or level of compensation offered to the cooperating broker or the name of a brokerage or agent." (Policy Statement 8.5).  The NAR rule that corresponds with this Policy Statement is Section 4.6 in the NAR Handbook.

### III. Smart MLS's Rules and Regulations

11. Smart MLS's Rules and Regulations were adopted on July 28, 2017.  A true and correct copy of the current version is attached hereto as "**Exhibit C**" and was last updated on October 6, 2025.

12. I have reviewed Smart MLS's Rules and Regulations and verified that Smart MLS follows what Plaintiff has defined as the relevant rules in his motion.  Specifically, Smart MLS has adopted the same requirements as NAR's IDX display rule.  Further, Connecticut has long required buyer-broker agreements, and Smart MLS has implemented functionality to disallow filtering of listings by compensation which prevents the same conduct proscribed by NAR's non-filtering rule.

### IV. IDX Listing Display Rule

13. Section 12.3.2 of Smart MLS' Rules and Regulations state that "all listings displayed pursuant to IDX shall identify the listing firm and the firm's preferred contact method, as provided by the firm."

14. Section 12.3.4 of Smart MLS' Rules and Regulations states that "all listings displayed pursuant to IDX shall identify the listing agent."

15. In addition, Smart MLS enhanced the broker attribution fields to, by default, include the brokerage phone number and agent phone number. This information is also included in IDX data feeds. Through their accounts, Smart MLS participants can change their settings to display the company email address instead of a phone number.

V. **Buyer-Broker Agreement Rule**

16. For nearly thirty years, Connecticut law has required written buyer agency agreements and a required notice for consumers about fees being negotiable. *See* Conn. Agencies Regs. § 20-328-6a(2).

17. Written and clear disclosures to consumers that real estate professional fees are not set by law and are negotiable have been in place in Connecticut for many years. *See* Conn. Gen. Stat. § 20-311(20).

18. By requiring its membership to comply with Connecticut law, Smart MLS is in compliance with NAR's buyer-broker agreement rule and does not need to include an explicit buyer-broker agreement rule.

VI. **Non-Filtering Function**

19. In August 2024, Smart MLS removed the following fields from the listing input functionality on its database: Buyers Agent Compensation, Type Buyer Agent Compensation Amount, Compensation Notes, and Dual/Variable Rate Commission.

20. Smart MLS also modified certain functions when generating reports and displays on the database that eliminate the buyer's compensation information on all listings.

21. In addition, Smart MLS monitors listings to ensure agents do not reference compensation in any fields, descriptions, photos, supplemental documents, and virtual tours.

22. By modifying the Smart MLS database, including limiting the input and search functionality, modifying reports and displays, and monitoring listings, Smart MLS is in compliance with NAR's non-filtering rule.

23. Smart MLS has published a webpage, attached hereto as "**Exhibit D**," explaining how Smart MLS complies with NAR's Non-Filtering Rule. The webpage is available to the public and can be accessed at https://smartmls.com/settlement/.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 8, 2025
Milford, Connecticut

Kathleen Elson
Chief Executive Officer
Smart MLS, Inc.