**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-81016-CIV-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

      Plaintiff,

vs.

NATIONAL ASSOCIATION OF
REALTORS®, et al.,

      Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND .......................................................................................................2

III.    ARGUMENT .............................................................................................................5

      A.      DEFENDANT LOCAL REALTOR® ASSOCIATIONS AND MULTIPLE
            LISTING SERVICES ALREADY ENFORCE THE RULES AT ISSUE AND A
            COURT ORDER REQUIRING IMMEDIATE AND BLANKET
            "ENFORCEMENT" IS VAGUE AND LACKS SPECIFICITY ............................5

      B.      PLAINTIFF HAS NOT CLEARLY ESTABLISHED EACH ELEMENT
            REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION ..............................8

            1.      Defendants' Motions to Dismiss Establish that Plaintiff Cannot Show a
                 Substantial Likelihood of Success on the Merits.........................................9

            2.      Plaintiff Cannot Show an Imminent Irreparable Harm After Waiting Years
                 to Move for an Injunction Based on Alleged Past Injuries that Lack
                 Evidentiary Support ..................................................................................11

            3.      The Balance of Hardships Favors Denying Plaintiff's Motion Because
                 Defendant Local REALTOR® Associations and MLSs Already Enforce the
                 Rules at Issue and Plaintiff Has Not Shown Their Alleged Non-
                 Enforcement Harms His Flat-Fee Brokerage Service.................................13

            4.      Plaintiff's Preliminary Injunction Would Not Serve the Public Interest But
                 Threaten the Orderly Operation of Local REALTOR® Associations and
                 MLSs Across the Country.........................................................................17

      C.      PLAINTIFF FAILS TO ADDRESS THE SECURITY REQUIRED FOR
            OBTAINING INJUNCTIVE RELIEF UNDER RULE 65(C).............................19

IV.     CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Adams v. Bordeau Metals Se., Ltd. Liab. Co.*,
No. 24-11572, 2025 WL 1122444 (11th Cir. Apr. 15, 2025) ............................................ 11

*Alabama v. United States Army Corps of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) ...................................................................................... 12

*Am. II Group, LLC v. Sourceability N.A., LLC*,
No. 24-cv-01501, 2025 WL 81343 (M.D. Fla. Jan. 13, 2025) ........................................... 6

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ........................................................................................................ 18

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981) ...................................................................................... 13

*Cap., L.P. v. Heyden Enters., LLC*,
No. 23-cv-14248, 2024 WL 3738925 (S.D. Fla. July 19, 2024) ...................................... 12

*Carepatrol Franchise Sys. v. Kirby Care*,
No. 20-cv-22662, 2020 WL 4464698 (S.D. Fla. July 1, 2020) ........................................ 20

*Chavez v. Fla. SP Warden*,
742 F.3d 1267 (11th Cir. 2014) ...................................................................................... 14

*Chevaldina v. Katz,*
No. 17-cv-22225, 2018 WL 10517555 (S.D. Fla. Feb. 19, 2018) .................................... 16

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
846 F.2d 284 (5th Cir. 1988) .......................................................................................... 19

*Dickerson v. Stuart*,
877 F. Supp. 1556 (M.D. Fla. 1995) ............................................................................... 10

*Dunkin' Donuts Franchised Rests. LLC v. Rizvi, Inc.*,
No. 07-cv-61308, 2007 WL 9701084 (S.D. Fla. Dec. 13, 2007) ....................................... 8

*Ecom Auth., LLC v. Amazon.com Services, LLC*,
No. 24-cv-24084, 2024 WL 5704167 (S.D. Fla. Nov. 25, 2024) ..................................... 10

*Excelsior Med. Corp. v. Ivera Med. Corp.*,
No. 13-cv-80840, 2014 WL 12452460 (S.D. Fla. Sep. 29, 2014) .................................... 12

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
  648 F.2d 956 (5th Cir. 1981) ............................................................................................. 13

*FTC v. Procter & Gamble Co.*,
  386 U.S. 568 (1967) ........................................................................................................... 18

*Globus Med., Inc. v. Vortex Spine, LLC*,
  605 F. App'x 126 (3d Cir. 2015) ....................................................................................... 20

*Hare v. Wells Fargo Bank, N.A.*,
  No. 12-cv-00435, 2012 WL 3940517 (M.D. Fla. Aug. 20, 2012) ..................................... 16

*Hughey v. JMS Dev. Corp.*,
  78 F.3d 1523 (11th Cir. 1996) .................................................................................. 6, 8, 17

*Int'l Test & Balance, Inc. v. Associated Air & Balance Council*,
  14 F. Supp. 2d 1033 (N.D. Ill. 1998) ................................................................................. 19

*Jones v. Brown*,
  518 F. App'x 643 (11th Cir. 2013) ..................................................................................... 19

*Just. Brands LLC v. Fla. Dep't of Agric. & Consumer Servs.*,
  No. 23-cv-62081, 2023 WL 8852001 (S.D. Fla. Dec. 1, 2023) ......................................... 12

*NuVasive, Inc. v. LeDuff*,
  No. 19-cv-00698, 2019 WL 5962658 (M.D. Fla. Nov. 13, 2019) ....................................... 9

*Powers v. Sec'y, Fla. Dep't of Corr.*,
  691 F. App'x 581 (11th Cir. 2017) ....................................................................................... 5

*Sas Inst., Inc. v. World Programming Ltd.*,
  874 F.3d 370 (4th Cir. 2017) ............................................................................................. 19

*Schultz v. State*,
  42 F.4th 1298 (11th Cir. 2022) .......................................................................................... 10

*Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*,
  188 F. Supp. 2d 1350 (S.D. Fla. 2002) .............................................................................. 12

*Skyjet, Inc. v. CSDS Asset Mgmt., Ltd. Liab. Co.*,
  No. 22-cv-21651, 2022 WL 4769113 (S.D. Fla. Aug. 22, 2022) ....................................... 14

*Sprint Commc'n's, Inc. v. Calabrese*,
  No. 18-cv-60788, 2018 WL 6653079 (S.D. Fla. July 5, 2018) .......................................... 11

*Stephens v. Goggans*,
  No. 14-cv-00569, 2014 WL 3385072 (M.D. Ala. July 9, 2014) ........................................ 10

*Students for Just. in Palestine at the Univ. of Fla. v. Rodrigues,*
  No. 23-cv-00275, 2024 WL 374543 (N.D. Fla. Jan. 31, 2024) ..................................... 9, 18

*Swain v. Junior,*
  961 F.3d 1276 (11th Cir. 2020) ............................................................................................ 5

*Taaffe v. Robinhood Mkts., Inc.,*
  No. 20-cv-00513, 2020 WL 1531127 (M.D. Fla. Mar. 31, 2020) ...................................... 20

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.,*
  102 F. Supp. 3d 1321 (S.D. Fla. 2015) ................................................................................. 9

*Tropical Fruit Trading, Inc. v. AgroFarms, LLC,*
  No. 16-cv-21735, 2016 WL 4376747 (S.D. Fla. Aug. 17, 2016) ....................................... 13

*Trump v. James,*
  647 F. Supp. 3d 1292 (S.D. Fla. 2022) .............................................................................. 18

*United States v. EME Homer City Generation, L.P.,*
  727 F.3d 274 (3d Cir. 2013)................................................................................................. 6

*Vickland v. Am. Royal Ass'n,*
  No. 08-cv-00758, 2008 WL 4748184 (W.D. Mo. Oct. 23, 2008) ............................... 17, 19

*Vraiment Hosp., LLC v. Binkowski,*
  No. 11-cv-01240, 2012 WL 1493737 (M.D. Fla. Mar. 19, 2012) ..................................... 17

*Worsham v. TSS Consulting Grp., LLC,*
  No. 18-cv-01692, 2019 WL 7482221 (M.D. Fla. Sep. 18, 2019)...................................... 18

*Wreal, Ltd. Liab. Co. v. Amazon.com,*
  840 F.3d 1244 (11th Cir. 2016) .................................................................................... 5, 11

*Wright v. 15Th Dist. Palm Beach Cnty. State Atty. Off.,*
  No. 24-cv-81145, 2024 WL 5455626 (S.D. Fla. Dec. 9, 2024)......................................... 12

## STATUTES AND RULES

Fed. R. Civ. P. 65(c) ........................................................................................................... 5, 20

Fed. R. Civ. P. 65(d) ..........................................................................................................passim

Defendants National Association of REALTORS®; Broward, Palm Beaches and St. Lucie REALTORS®, Inc.; Beaches MLS, Inc.; Miami Association of REALTORS®, Inc.; Orlando Regional REALTOR® Association, Inc.; Space Coast Multiple Listing Service, Inc.; Space Coast Association of REALTORS®, Inc.; Royal Palm Coast REALTOR® Association, Inc.; Florida Gulf Coast Multiple Listing Service, Inc.; Naples Area Board of REALTORS®, Inc.; My Florida Regional MLS, Inc. (d/b/a Stellar MLS); Northeast Florida Multiple Listing Service, Inc. (d/b/a realMLS); Northeast Florida Association of REALTORS®, Inc.; Central Panhandle Association of REALTORS®, Inc.; Connecticut Association of REALTORS®; Smart MLS, Inc.; and West and Southeast REALTORS® of the Valley, Inc. oppose Plaintiff's Motion for Preliminary Injunction.

## I.       INTRODUCTION

Plaintiff moves for a mandatory preliminary injunction to compel 16 REALTOR® associations and multiple listing services ("MLS") to "enforce" certain NAR rules—but the Defendant local associations and MLSs already do enforce these rules, and "enforcement" procedures are unique to each entity and require individualized reporting, investigating, and adjudication.  Like any professional organization, the REALTOR® associations and MLSs rely on their members to report perceived violations and then have a variety of individual policies and processes governing enforcement.  There is no magic button to ensure every industry participant is in perfect compliance with all rules at all times.  This renders Plaintiff's request for this Court to order "enforcement" impossibly vague and unworkable, in violation of Rule 65(d)'s requirement that injunctive relief describe in reasonable detail what acts are being required.

Additionally, the documents Plaintiff attaches to his Motion show only that Plaintiff misreads and mischaracterizes the rules, or simply disagrees with what they should require, which demonstrates that Plaintiff is unlikely to succeed on the merits, is not facing an irreparable harm,

1

the balance of hardships weigh in favor of Defendants, and a mandatory injunction is against the public interest.  Plaintiff is also not entitled to a preliminary injunction after waiting years to bring this action to remedy alleged past injuries to his flat-fee brokerage.

Given the number of Defendant REALTOR® associations, MLSs, and rules at issue, Plaintiff's ask to the Court is unclear.  But a directive to "enforce" NAR's mandatory rules requiring that Defendants ensure compliance by their entire membership would be impossible to comply with.  It would also require constant judicial oversight of routine matters concerning ethics and procedures in real estate transactions and involvement in Defendants' daily operations.  At bottom, even putting aside the speciousness of Plaintiff's claim that perceived lack of enforcement can constitute an antitrust violation, the mandatory preliminary injunction Plaintiff seeks is unworkable, unnecessary, and impractical to administer.  The Court should deny the Motion.

## II.    BACKGROUND[1]

In August 2025, Plaintiff, proceeding pro se, filed this antitrust lawsuit against NAR and 16 local REALTOR® associations and MLS providers.[2]   ECF No. 1 ¶¶ 27–46 ("Compl.").  Plaintiff is a licensed real estate agent and broker with Blue Lighthouse Realty, Inc.[3]  ECF No. 9-

---

[1] Defendants also incorporate by reference the facts set forth in Defendants' Motion to Dismiss Plaintiff's Complaint and Defendants Connecticut Association of REALTORS®, West and Southeast REALTORS® of the Valley, and Smart MLS's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens*.  ECF Nos. 59, 60.

[2] An MLS is a private database that is created and maintained by real estate professionals to help their clients buy and sell property.  Gansho Decl. ¶ 9.  An MLS allows agents to efficiently see homes for sale and get helpful marketplace data, which provides a single location where buyers (through their agents) can search available listings and sellers (through their agents) can publicize their property to a large number of in-market buyers.  *Id.*  MLSs also typically share listing information to national and local websites that advertise property.  *Id.*  Because of the system's efficiency, the vast majority of real estate transactions take place on an MLS.  *Id.*  MLSs are usually owned and operated by local REALTOR® associations or their wholly owned subsidiaries.  *Id.*

[3] Plaintiff alleges that he operates a real estate brokerage service through an online platform (www.snapflatfee.com®) that allows home sellers to pay a fee for limited brokerage services.  Compl. ¶ 19.  Plaintiff's brokerage is Blue Lighthouse Realty, Inc.  Dickens Decl. ¶ 4, Ex. A.

1 at 133.  Blue Lighthouse, Plaintiff's "non-traditional, low-cost real estate brokerage," offers a fixed-fee listing service whereby property owners pay a one-time fee to list their property for sale. Compl. ¶ 19; Decl. of Zachary B. Dickens ("Dickens Decl."), Exhibit A (Blue Lighthouse Realty Inc. Entity Report).  Under Blue Lighthouse's business model, the seller coordinates showings, negotiates directly with buyers, and completes the property sale.  Compl. ¶ 22.  If Blue Lighthouse's customers elect to offer a commission to the buyer's broker, the seller agreement entitles Blue Lighthouse to "deduct a nominal 0.25%" before remitting the rest to the buyer's agent.  *See* SnapFlatFee.com, https://snapflatfee.com/.

NAR is a nationwide trade association in the real estate industry.  Decl. of Rodney Gansho ("Gansho Decl.") ¶ 2.  Its membership consists of licensed real estate professionals—including brokers, sale agents, property managers, appraisers, and counselors—who belong to state and local REALTOR® associations across the country.  *Id.* ¶ 3.  NAR develops standards for efficient, effective, and ethical real estate business practices, including its Code of Ethics and Handbook on Multiple Listing Policy.  *Id.* ¶ 5.  This Handbook is a guide for local associations of REALTORS® regarding the operation of MLSs.  *Id.* ¶ 8.  The Handbook contains different tiers of model rules: mandatory, recommended, optional, and informational.  *Id.* ¶ 11.

State and local associations of REALTORS® are independently incorporated entities (with separate governing rules and bylaws).  *Id.* ¶ 4.  State REALTOR® associations act as intermediaries between NAR and the local REALTOR® associations.  *Id.* ¶ 13.  Local associations (together as a group or through wholly owned subsidiaries) can own and operate MLSs but must abide by certain standards to use NAR's REALTOR® trademark and access professional liability insurance procured by NAR.[4]  *Id.* ¶¶ 9, 12.  Those standards include enforcing the Code of Ethics

---

[4] In some jurisdictions, MLSs are responsible for enforcing MLS rules.  Gansho Decl. ¶ 9.

and following all mandatory NAR policies and MLS rules in the Handbook. *Id.* ¶¶ 5, 6(c), 12. The local associations enforce the MLS rules on their members and are responsible for monitoring their members' compliance and for taking enforcement steps when violations occur.[5]  *Id.* ¶ 14. Because each association administers its own procedures, compliance questions are resolved individually, with violations determined on a case-by-case basis. *Id.* ¶¶ 12–14.  In other words, NAR establishes national standards, while state and local REALTOR® associations enforce them through their own governing procedures.  *Id.* ¶¶ 5–15.

The Complaint asserts six counts under the Sherman Act, alleging that Defendants have violated federal antitrust law by collectively refusing to enforce certain NAR rules that Plaintiff acknowledges protect competition.  Compl. ¶¶ 8, 376–447.  As it relates to Plaintiff's Motion, the Complaint alleges that Defendants have failed to enforce three of NAR's mandatory rules, including the: (1) "Non-Filtering Rule," prohibiting filtering of customer-facing listings by brokerage/agent or compensation offered (Policy Statement 8.5); (2) "IDX Display Rule," requiring that contact information for listing brokerages be displayed in online listings (Policy Statement 7.58); and (3) "Buyer-Broker Agreement Rule," mandating written agreements between MLS participants working with a buyer setting forth the terms of compensation (Policy Statement 8.13).  Gansho Decl. ¶ 16.  Plaintiff contends that Defendants' alleged refusal to enforce these pro-competitive rules has competitively disadvantaged his discount-brokerage business.  Compl. ¶¶ 21–26.  Plaintiff alleges that after years of Defendants' non-compliance—and spending months attempting to resolve his concerns—he filed this lawsuit seeking declaratory, injunctive, and

---

[5] State REALTOR® associations do not typically own or operate MLSs.  Gansho Decl. ¶ 13. Instead, State REALTOR® associations act as intermediaries and service providers between NAR and the local REALTOR® associations, including concurrently assuming responsibility for reviewing and enforcing Code of Ethics violations with local associations.  *Id.*

monetary relief, including treble damages. *Id.* at 114–21.  Plaintiff now moves for a mandatory preliminary injunction compelling Defendants to "enforce" NAR's mandatory rules.

## III.   ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy." *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citation modified).  Accordingly, it must identify the relief sought and "describ[ing] in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C).  The moving party must also provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

To obtain a preliminary injunction, Plaintiff must establish that "(1) [he] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the [Plaintiff] outweighs whatever damage the proposed injunction may cause [Defendants]; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284–85, 1292 (11th Cir. 2020) (citation modified).  Because Plaintiff seeks a mandatory injunction requiring the Defendant REALTOR® associations and MLSs to adopt and comply with NAR's mandatory rules, the standard is heightened: Plaintiff must "clearly establish" each element. *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) ("[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo[,] is particularly disfavored" (citation modified)).  Plaintiff fails to satisfy each of the requirements for obtaining a preliminary injunction.

### A.   DEFENDANT LOCAL REALTOR® ASSOCIATIONS AND MULTIPLE LISTING SERVICES ALREADY ENFORCE THE RULES AT ISSUE AND A COURT ORDER REQUIRING IMMEDIATE AND BLANKET "ENFORCEMENT" IS VAGUE AND LACKS SPECIFICITY

Rule 65(d) requires that the preliminary injunction must "state its terms specifically" and

"describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Thus, injunctions are inappropriate where the relief is "too vague to be effectively enforced by coercive contempt." *Am. II Group, LLC v. Sourceability N.A., LLC*, No. 24-cv-01501, 2025 WL 81343, at *2 (M.D. Fla. Jan. 13, 2025). "The Eleventh Circuit's strict adherence to Rule 65(d) is 'designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.'" *Id.* at *4 (citation modified). It is not "appropriate for a district court to award relief that is impossible to fulfill." *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 295 (3d Cir. 2013) (citation modified); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1532 (11th Cir. 1996) (vacating preliminary injunction that "lacked the specificity required by Rule 65(d), and compliance with its terms was impossible").

Here, Plaintiff's preliminary injunction asks this Court to order all Defendants to "enforce" the rules at issue. ECF No. 9-2 at 1–3. An order compelling Defendants to "enforce" the rules is impossible. *First*, the Defendant local associations and MLSs *already enforce* their rules under their specific and individual enforcement mechanisms—so ordering them to "enforce," which is the description of the relief Plaintiff seeks, is meaningless in this context. Just like any self-governing professional industry, there can be no guarantee that all participants are in perfect compliance with the rules at all times, but that truth does not mean that non-enforcement of the rules is common, much less rampant. The exhibits attached to Plaintiff's Motion demonstrate this.

On the IDX display rule, Plaintiff attaches screenshots allegedly showing a handful of brokerage websites (non-parties to this litigation) not in compliance with the IDX display rule because, according to Plaintiff, the listing agent contact information is not prominently displayed where Plaintiff believes it belongs. ECF No. 9-1 at 104–29. Setting aside that Plaintiff has not

shown that his reading of the IDX display rule's requirements is correct, these exhibits are just a random sampling of the thousands of brokerage websites with IDX feeds from Defendants' MLSs. Attached as Exhibits F–P to the Declaration of Zachary B. Dickens are additional screenshots of other brokerages whose websites include many of the *same* listings but display the listing agent information much differently.  These contrasting exhibits disprove Plaintiff's assumption that non-compliance is systematic, pervasive, and the result of a grand conspiracy.

On the buyer-broker agreement rule, Plaintiff's exhibits *on their face* demonstrate that the Defendant local associations and MLSs are enforcing the rule.  In each exhibit example, Plaintiff e-mailed the Defendant local associations and MLSs and asked whether a buyer agent in a particular transaction followed the rule, and the entities replied that they checked, and confirmed that, the transaction was in compliance.  ECF No. 9-1 at 161–91.  This is what enforcement looks like.  Plaintiff simply disagrees with what the buyer-broker agreement rule requires, which is why an order for "enforcement" would not comply with Rule 65(d).  And similarly, on the non-filtering rule, Plaintiff's exhibits show nothing of whether the Defendant local associations and MLSs are enforcing the rule.  Plaintiff's exhibits show a listing agent filter on MLS feeds *to MLS participants* (i.e., real estate professionals).  ECF No. 9-1 at 199–214.  The non-filtering rule concerns MLS feeds *visible to consumers*.  Gansho Decl. ¶ 16(c).  So again, the injunctive relief Plaintiff requests ordering Defendants to simply "enforce" the rules fails to "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(C).

*Second*, uniform, automatic compliance with an order to "enforce" the rules is impossible because "enforcement" has no single, generally applicable meaning in this context.  Each local association administers its own procedures, and compliance questions are resolved on a case-by-case basis.  Gansho Decl. ¶ 14.  An order compelling Defendants to enforce the rules would invite

conflicting interpretations, trigger endless disputes between the parties, and require constant judicial supervision; all which weigh against granting a preliminary injunction. *See Hughey*, 78 F.3d at 1532 (reversing order granting a preliminary injunction because lower court "was incapable of fashioning an operative command capable of enforcement" and "specifically identify[ing] the acts that JMS was required to do or refrain from doing"); *Dunkin' Donuts Franchised Rests. LLC v. Rizvi, Inc.*, No. 07-cv-61308, 2007 WL 9701084, at *1 (S.D. Fla. Dec. 13, 2007) ("courts are loathe to engage in detailed supervision of a defendant's future conduct to ensure compliance with a mandatory injunction").

Thus, the Court should deny the Motion because Plaintiff's preliminary injunction fails to satisfy the specificity requirement under Rule 65(d) since it would be impossible for Defendants to comply with and the Court to enforce.

### B.   PLAINTIFF HAS NOT CLEARLY ESTABLISHED EACH ELEMENT REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION

Plaintiff has also failed to "clearly establish" any of the four preliminary injunction elements required for a mandatory injunction. First, he cannot show a likelihood of success on the merits. As explained more fully in Defendants' motions to dismiss, Plaintiff has failed to state a claim under Section 1 of the Sherman Act and pleads no facts to support a conspiracy among the Defendants. Instead, his allegations amount to sporadic examples of alleged "non-enforcement." Plaintiff also fails to allege other necessary elements of his Sherman Act claims. Second, Plaintiff cannot show imminent or irreparable harm. He waited years before bringing this lawsuit and seeking injunctive relief, and the loss of business and goodwill Plaintiff claims allegedly happened in the past. Nor can Plaintiff show any future harm since his non-traditional brokerage model, requiring customers to pay a flat fee upfront, insulates Plaintiff from the alleged harm non-compliance with NAR's rules may cause. Third, the balance of harms weighs in favor of

Defendants as the injunction would impose an impossible standard—requiring Defendants to guarantee complete compliance by all members—while subjecting the Court to continuous oversight of routine real estate matters. Finally, the injunction does not serve the public interest. Taken to its logical conclusion, the broad injunction Plaintiff seeks would require NAR to take the extreme step of revoking the REALTOR® status of local charters, which would deprive members of the protections afforded by NAR. It would also defeat Plaintiff's claimed goal because neither Defendants nor their members would have to follow NAR's mandatory rules.

### 1.   Defendants' Motions to Dismiss Establish that Plaintiff Cannot Show a Substantial Likelihood of Success on the Merits

Plaintiff begins by arguing that he has a substantial likelihood of prevailing on his Sherman Act claims. Mot. at 7. Plaintiff's arguments are largely a retread of the allegations in the Complaint. Indeed, the Motion tracks the Complaint almost verbatim. In both, Plaintiff quotes the same rules, raises the same arguments, and seeks the same injunctive relief. *Compare* Compl. at 43–44, 59, 75, 121–24 *with* ECF No. 8 at 11, 13–14, 16, 21–22.

But to prove a substantial likelihood of success on the merits, the movant "must demonstrate a likelihood of success at trial as to both its *prima facie* case and the affirmative defenses asserted by the [non-moving party]." *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) (citation modified). The moving party also "cannot rely on its pleadings but must support a motion for preliminary injunction with evidence." *NuVasive, Inc. v. LeDuff*, No. 19-cv-00698, 2019 WL 5962658, at *4 (M.D. Fla. Nov. 13, 2019); *Students for Just. in Palestine at the Univ. of Fla. v. Rodrigues*, No. 23-cv-00275, 2024 WL 374543, at *2 (N.D. Fla. Jan. 31, 2024) ("[A]t the preliminary-injunction stage, this Court need not accept Plaintiff's allegations as true or draw all reasonable inferences in Plaintiff's favor." (citation modified)).

Along with this response, Defendants have moved to dismiss the Complaint, asserting multiple grounds for dismissing this lawsuit, including that: (1) Plaintiff does not have Article III standing because he pleads only injury to his business and lacks antitrust standing as to the alleged harm to his business; (2) Plaintiff has engaged in improper group pleading and does not plead facts sufficient to show a conspiracy under the Sherman Act among Defendants; (3) Plaintiff does not plead a Sherman Act claim under any standard by attempting to shoehorn his unusual allegations into the price-fixing, market allocation, or group boycott frameworks; (4) Plaintiff has not properly alleged anticompetitive harm in a properly defined market; (5) Plaintiff improperly challenges the written buyer agreement rule that remains under the jurisdiction of the U.S. District Court for the Western District of Missouri; and (6) the Court lacks personal jurisdiction over Defendants CT REALTORS®, WeSERV, and Smart MLS.   ECF Nos. 59, 60.   Defendants incorporate the arguments raised in their motions to dismiss by reference in opposing the preliminary injunction. In fact, the Court should consider the motions to dismiss *before* Plaintiff's Motion as they may render it moot. *See Ecom Auth., LLC v. Amazon.com Servs., LLC*, No. 24-cv-24084, 2024 WL 5704167, at *1 (S.D. Fla. Nov. 25, 2024) ("[W]hether Plaintiff states plausible claims for relief . . . . must necessarily be resolved before any preliminary injunctive relief is entertained.").

For the same reasons argued in Defendants' motions to dismiss, Plaintiff cannot demonstrate a likelihood of success on the merits. *See Schultz v. State*, 42 F.4th 1298, 1313 (11th Cir. 2022) ("Indeed, without standing or a viable legal claim, a litigant is not entitled to a preliminary injunction."); *Stephens v. Goggans*, No. 14-cv-00569, 2014 WL 3385072, at *2 (M.D. Ala. July 9, 2014) (observing that "Plaintiff's inability to even state a claim within his Complaint evidences that he is unable to meet his burden of showing a substantial likelihood of success on the merits of his claims"); *Dickerson v. Stuart*, 877 F. Supp. 1556, 1562–63 (M.D. Fla. 1995)

(finding that granting motion to dismiss rendered preliminary injunction moot).

> **2.**    **Plaintiff Cannot Show an Imminent Irreparable Harm After Waiting Years to Move for an Injunction Based on Alleged Past Injuries that Lack Evidentiary Support**

Next, Plaintiff argues that an injunction is necessary because "Defendants have refused to enforce rules enacted as far back as 2021" and claims that he attempted to resolve these concerns "[f]or months preceding this lawsuit." Mot. at 16. According to Plaintiff, the "years of restraint and multiple direct resolution attempts" support his request for injunctive relief. *Id.* at 5. But Plaintiff's delay shows that his alleged injuries are neither imminent nor irreparable.

Preliminary injunctions are "premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal*, 840 F.3d at 1246, 1248 (affirming district court's denial of preliminary injunction where plaintiff failed to prove an imminent irreparable harm after waiting five months to move for injunctive relief). For this reason, a party's "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *See Adams v. Bordeau Metals Se., LLC*, No. 24-11572, 2025 WL 1122444, at *4 (11th Cir. Apr. 15, 2025) (citation modified) (vacating preliminary injunction where plaintiffs waited 15 months to file suit after nuisance began).

Plaintiff attempts to justify his delay, asserting that he first exhausted his "private remedies," including "filing ethics complaints, submitting compliance requests, and engaging Defendants directly via e-mail and conversations." Mot. at 4. But Plaintiff's exhibits include e-mails exchanged with Defendants beginning in September 2024. ECF No. 9-1 at 131, 135, 138, 144. These efforts to resolve Plaintiff's claims out of court are not enough to support waiting over a year to move for injunctive relief. *See Sprint Commcn's, Inc. v. Calabrese*, No. 18-cv-60788, 2018 WL 6653079, at *5 (S.D. Fla. July 5, 2018) (denying preliminary injunction because a year-long delay between learning of infringement to suing, during which the parties exchanged letters

11

and phone calls attempting to resolve the dispute, disproved an irreparable harm); *see also Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1358 (S.D. Fla. 2002) (finding no irreparable harm because movant waited almost a year after learning about misconduct to file).

Plaintiff also complains that Defendants' failure to enforce the mandatory rules has resulted in "the loss of customers and goodwill" by reducing visibility for his real estate listings and slowing his ability to gain referrals. Mot. at 16–18. But the irreparable injury required for injunctive relief must address *future* harm. *See Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005) (vacating injunction addressing past harm and explaining that "preventing irreparable harm in the future is the sine qua non of injunctive relief" (citation modified)). Plaintiff's alleged past harm is also compensable by monetary damages. *See Wright v. 15Th Dist. Palm Beach Cnty. State Atty. Off.*, No. 24-cv-81145, 2024 WL 5455626, at *1 (S.D. Fla. Dec. 9, 2024) (finding movant failed to satisfy burden to prove an irreparable injury, which "cannot be redressed by monetary damages"); *Excelsior Med. Corp. v. Ivera Med. Corp.*, No. 13-cv-80840, 2014 WL 12452460, at *2 (S.D. Fla. Sept. 29, 2014) (holding that "[l]ost sales and profits are sufficiently compensated with money damages and, alone, are not considered irreparable harm to justify a preliminary injunction").

To the extent Plaintiff argues that he will suffer *future* harm, his allegations alone are insufficient. While the loss of future customers and goodwill may support irreparable harm, Plaintiff fails to argue, much less present evidence, to support a resulting economic loss. *See Just. Brands LLC v. Fla. Dep't of Agric. & Consumer Servs.*, No. 23-cv-62081, 2023 WL 8852001, at *3 (S.D. Fla. Dec. 1, 2023) (denying preliminary injunction because plaintiff did not establish irreparable harm by providing "relatively specific figures of economic loss," even when "coupled with non-specific allegations of loss of customers and goodwill"); *see also Cap., L.P. v. Heyden*

12

*Enters., LLC*, No. 23-cv-14248, 2024 WL 3738925, at *13 (S.D. Fla. July 19, 2024) (finding no irreparable harm where plaintiff failed to present "specific evidence to establish extensive loss of goodwill or loss of customers").

Indeed, Plaintiff has not presented concrete examples of any loss of customer goodwill or ongoing loss of future customers.  Rather, Plaintiff supports his argument with "three recent developments" comprised of online commentary about this lawsuit (ECF No. 9-1 at 28–30, 158–59) and a study on cost-based commission systems (ECF No. 9-1 at 216).  Mot. at 4–5.  Even if this evidence did support Plaintiff's argument, the potential loss of future business and goodwill is not imminent irreparable harm.  *See Tropical Fruit Trading, Inc. v. AgroFarms, LLC*, No. 16-cv-21735, 2016 WL 4376747, at *4 (S.D. Fla. Aug. 17, 2016) ("[A] preliminary injunction will not be issued simply to prevent the *possibility* of some remote future injury [such as a] likelihood that Tropical will be run out of business" (citation modified)).

Plaintiff also argues that "irreparable harm to the public itself – through suppression of competition – can independently justify injunctive relief."  Mot. at 18.  But neither case Plaintiff cites stands for that proposition.  *Id.* (citing *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 (5th Cir. 1981) (staying enforcement of local ordinance pending appeal regarding whether it violated appellant's first amendment rights))); *Bonner v. City of Prichard*, 661 F.2d 1206, 1208 (11th Cir. 1981) (adopting all decisions of the former Fifth Circuit before October 1981, as binding precedent in the Eleventh Circuit).  That makes sense, considering Plaintiff must establish an injury that is personal absent an injunction.

### 3. The Balance of Hardships Favors Denying Plaintiff's Motion Because Defendant Local REALTOR® Associations and MLSs Already Enforce the Rules at Issue and Plaintiff Has Not Shown Their Alleged Non-Enforcement Harms His Flat-Fee Brokerage Service

Plaintiff also fails to establish that the balance of hardships weighs in favor of a mandatory

13

injunction. The third element of the preliminary injunction test requires the movant to prove "the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014). The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Skyjet, Inc. v. CSDS Asset Mgmt., LLC*, No. 22-cv-21651, 2022 WL 4769113, at \*10 (S.D. Fla. Aug. 22, 2022) (denying preliminary injunction that would harm defendant by causing it to incur charges over $300,000 and lose the ability to sell its product).

According to Plaintiff, "[a]n injunction is essential to halt ongoing, irreparable harm that poisons the competitive process, deceives consumers, and directly injures Plaintiff's business." Mot. at 16. Plaintiff claims that Defendants' failure to enforce NAR's mandatory rules effectively steers "customers towards traditional brokerage models and preserving the status quo commission structures, while excluding innovative, lower cost competitors." *Id.* at 10–12. But Plaintiff's evidence does not support a conspiracy. Nor does Plaintiff's evidence show that the association Defendants' members or MLS Defendants' participants are systematically violating the rules.

***Denying the injunction would not impose a hardship on Plaintiff because Defendant local associations and MLSs have adopted the rules at issue and there is no evidence of systemic and sweeping non-enforcement.*** For example, Plaintiff relies on excerpts from local handbooks to argue that Smart MLS and Stellar MLS have not adopted NAR's mandatory rules. *See* ECF No. 9-1 at 46–48, 71–75. Plaintiff is demonstrably wrong. For example, attached as Exhibit 2.5 to Plaintiff's Motion is an excerpt of the rules adopted by Stellar MLS. ECF No. 9-1 at 70. Part of Exhibit 2.5 is Article 19.22 of Stellar's rules, which is the very IDX display rule that Plaintiff's Motion erroneously claims was not adopted. *Id.* at 75. That is, Plaintiff's allegations are contradicted by his own exhibits. Nonetheless, both Stellar MLS and Smart MLS have submitted

14

declarations explaining how they have adopted the rules. *See* Decl. of Kathy Elson ¶¶ 13–15, 18, 22, ECF No. 60-3; Decl. of Shayne Fairley ¶ 14.

Plaintiff also points to prior complaints submitted to Defendants to show alleged violations of the buyer-broker agreement rule. *See* ECF No. 9-1 at 161–91. But these exhibits confirm there *is* a system to verify that buyer-broker agreements are in place. *Id.* Apparently, Plaintiff merely disagrees with Defendants' refusal to provide him with a copy of the alleged violating member's broker agreement. *See* ECF No. 9-1 at 162, 164, 166, 189–90. Plaintiff also relies on MLS screenshots to claim violations of the non-filtering rule. *See* ECF No. 9-1 at 199–214. Plaintiff ignores that the rule governs only public, consumer-facing websites, not the professional tools brokers use to access MLS data. Gansho Decl. ¶ 16(c). Likewise, Plaintiff submits screenshots of real estate listing on brokerage websites to support alleged violations of the IDX display rule, along with e-mails reporting them. *See* ECF No. 9-1 at 104–53. But those e-mails show that Defendants have investigated the alleged violations. *See* ECF No. 9-1 at 130–53. And Defendants have provided the Court with listings on those same websites that are in compliance—including those hosting Plaintiff's properties. Dickens Decl., Exhibits F–P (Real Estate Listings).

***Denying the injunction would not impose a hardship on Plaintiff because he is not directly harmed by the conduct of which he complains***. Plaintiff also ignores that regardless of whether Defendants enforce NAR's mandatory rules, Blue Lighthouse gets paid either way. Plaintiff argues that Defendant local associations and MLSs have failed to enforce the non-filtering rule on their MLS platforms and "continue to enable participants to filter listings by brokerage name and listing agent name." Mot. at 16. But as a flat-fee brokerage, Blue Lighthouse charges a fee regardless of a listing's visibility and an ultimate sale. Compl. ¶ 19.

Plaintiff also cannot establish an injury under the IDX display rule requiring that online

listings include a listing broker's contact information.  Mot. at 11–12.  Under Blue Lighthouse's business model, the selling property owner is responsible for "showing the property, negotiating offers and coordinating their own closing."  *See* SnapFlatFee.com, https://snapflatfee.com/; Compl. ¶ 22.  Plaintiff gets paid for merely listing the property.

Plaintiff is also unable to challenge the buyer-broker agreement rule, which, as Plaintiff admits, was implemented as part of a class action settlement of litigation against NAR in the Western District of Missouri.  *See Burnett, et al. v. Nat'l Ass'n of REALTORS®, et al.*, No. 19-cv-332 (W.D. Mo. Apr. 19, 2024), ECF No. 1458-1.  That settlement received final approval on November 27, 2024, and the practice changes went into effect in August 2024.  *Id.* at ECF No. 1622.  Because the Western District of Missouri approved the practice changes and retained jurisdiction over the settlement, any alleged enforcement issues related to the buyer-broker agreement rule are subject to final approval by that court  *Id.*  ("The Court retains continuing and exclusive jurisdiction over all matters relating to the administration and consummation of the Settlements and to interpret, implement, administer, and enforce the Settlements."); *Hare v. Wells Fargo Bank, N.A.*, No. 12-cv-00435, 2012 WL 3940517, at *2 (M.D. Fla. Aug. 20, 2012) (denying preliminary injunction for conduct governed by a court-approved settlement agreement); *see also Chevaldina v. Katz*, No. 17-cv-22225, 2018 WL 10517555, at *6 (S.D. Fla. Feb. 21, 2018) (dismissing claims because another court "retained jurisdiction to enforce the terms of the settlement agreement and resolve disputes relating to that agreement").

***Local REALTOR® association and MLS Defendants already enforce the rules, so issuing an injunction that they cannot comply with is prejudicial.***  On the other hand, Defendants would suffer significant harm if compelled to ensure that their entire membership remains in compliance with NAR's mandatory rules at all times.  It is unclear what "enforcement" would

16

mean in these circumstances since it is different to each Defendant entity. Gansho Decl. ¶ 12. In fact, NAR, and the state REALTOR® association Defendants do not have responsibility for enforcing these rules. *Id.* ¶¶ 12–15  Additionally, as explained in Part I, under Defendants' individual processes and procedures, there is no practical way to bring their members into compliance automatically. Such an order would compel Defendants to undertake continuous, resource-intensive monitoring of thousands of members, diverting time and funds from their daily operations. That is why enforcement is carried out by local associations and MLSs through procedures that govern the orderly reporting, investigation, and resolution of alleged violations. *Id.* ¶¶ 12–15. The fact that some members are non-compliant does not mean that the Defendants refuse to enforce NAR's mandatory rules. *Id.* ¶¶ 12, 14. Ordering total compliance by all members would be impractical and impossible to achieve.

Plaintiff's mandatory injunction would impose obligations that Defendants cannot meet. These potential harms faced by Defendants weigh in favor of denying Plaintiff's preliminary injunction. *See Hughey*, 78 F.3d at 1532 (vacating preliminary injunction because "compliance with its terms was impossible"); *Vickland v. Am. Royal Ass'n*, No. 08-cv-00758, 2008 WL 4748184, at *9 (W.D. Mo. Oct. 23, 2008) (holding that the "right to regulate and enforce [defendant's] own rules," weighed against issuing a preliminary injunction).

### 4. Plaintiff's Preliminary Injunction Would Not Serve the Public Interest But Threaten the Orderly Operation of Local REALTOR® Associations and MLSs Across the Country

Contrary to Plaintiff's assertion, the public interest is not served by granting an injunction—it is best served by allowing Defendants to continue their operations without judicial intervention. The fourth factor for obtaining a preliminary injunction asks if "granting a preliminary injunction will disserve the public interest." *Vraiment Hosp., LLC v. Binkowski*, No. 11-cv-01240, 2012 WL 1493737, at *15 (M.D. Fla. Mar. 19, 2012) (citation modified). "In

exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Trump v. James*, 647 F. Supp. 3d 1292, 1298 (S.D. Fla. 2022) (citation modified).

Plaintiff contends that granting a mandatory injunction will "protect the competitive process itself from a concerted, industry-wide refusal to adhere to pro-competitive rules." Mot. at 19. But once again, neither case Plaintiff cites support that proposition. *Id.* at 19 citing *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (reversing lower court's finding that respondent had suffered a recognized antitrust injury outside the preliminary injunction context); *FTC v. Procter & Gamble Co.*, 386 U.S. 568, 577 (1967) (holding that § 7 of the Clayton Act prohibited merger that curtailed competition in bleach industry).

In any event, as mentioned above, it is unclear what "enforcement" would entail under the circumstances. Taken to its furthest conclusion, Plaintiff appears to argue that enforcement would include NAR revoking Defendants' charters and cancelling their shared liability insurance. Mot. at 9–10. But NAR invoking this extreme and rare procedure would undermine the purpose for which Plaintiff contends an injunction will serve. That is because once the charters are revoked, the Defendant local associations and MLSs, along with their respective members, will no longer be bound by NAR's "pro-competitive" rules. Gansho Decl. ¶¶ 12, 14. The Court should deny Plaintiff's Motion because the injunction compelling enforcement would not prevent the alleged harm it is intended to protect against. *See Rodrigues*, 2024 WL 374543, at *6 n.4 (denying preliminary injunction where "Plaintiff has not demonstrated how an injunction against the Governor would redress its asserted injuries when the Governor has neither the legal authority to discipline student organizations nor the ability to retract the Chancellor's memorandum"); *Worsham v. TSS Consulting Grp., LLC*, No. 18-cv-01692, 2019 WL 7482221, at *5 (M.D. Fla.

Sept. 18, 2019) (denying motion for preliminary injunction because movant failed to establish a "causal connection between the injunction and the harm").

Further, revoking the local associations' charters would cause their members to lose the protections afforded by NAR's professional standards and ethics rules along with access to the professional liability insurance provided by NAR.  Gansho Decl. ¶¶ 6(c), 12.  Those protections are instrumental in the orderly functioning of the real estate market.  *Id.* ¶ 7.  Indeed, without NAR's mandatory rules, professionals, and consumers alike would no longer know what standards apply.  The market disruption caused by Plaintiff's injunction weighs heavily against granting the Motion.  *See Sas Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 388 (4th Cir. 2017) (finding preliminary injunction that would cause customers to "expend significant time and money to replace their existing WPS systems" did not serve the public interest); *Vickland*, 2008 WL 4748184, at \*10 (concluding "the public interest will best be served by reaffirming the right of private organizations to enforce their own rules"); *see also Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 294 (5th Cir. 1988) ("[T]he establishment and monitoring of trade standards is a legitimate and beneficial function of trade associations."); *Int'l Test & Balance, Inc. v. Associated Air & Balance Council*, 14 F. Supp. 2d 1033, 1046 (N.D. Ill. 1998) (denying preliminary injunction, in part, because "[b]y preventing AABC from enforcing its bylaws, an injunction would only encourage members to ignore the association's standards").

## C.   PLAINTIFF FAILS TO ADDRESS THE SECURITY REQUIRED FOR OBTAINING INJUNCTIVE RELIEF UNDER RULE 65(C)

Plaintiff also fails to address the bond requirement for obtaining injunctive relief.  Courts in the Eleventh Circuit routinely deny preliminary injunctions for this reason alone.  *See Jones v. Brown*, 518 F. App'x 643, 644 (11th Cir. 2013) (affirming denial of preliminary injunction where movant "failed to adequately set forth facts on which the Court could make a reasoned

determination as to the amount of security which must be posted" (citation modified)); *Carepatrol Franchise Sys. v. Kirby Care*, No. 20-cv-22662, 2020 WL 4464698, at *2 (S.D. Fla. July 1, 2020) (denying TRO in part because movant failed to address security to pay costs and damages sustained by any party wrongfully enjoined).  Plaintiff's reference to the bond requirement in his proposed order is insufficient.  *See Taaffe v. Robinhood Mkts., Inc.*, No. 20-cv-00513, 2020 WL 1531127, at *7 (M.D. Fla. Mar. 31, 2020) (merely referencing bond in a proposed order violated Rule 65(c)).

If the Court is inclined to grant an injunction, it should require Plaintiff to post a substantial bond.  "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Court has "broad discretion" to determine the amount.  *Taaffe*, 2020 WL 1531127, at *7.  Yet, many appellate courts hold that "absent circumstances where there is no risk of monetary loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error." *Globus Med., Inc. v. Vortex Spine, LLC*, 605 F. App'x 126, 129 (3d Cir. 2015) (citation modified).

Because Plaintiff's Sherman Act claims are unsupported by the pleadings, let alone evidence, and the injunction would impose sever consequences on Defendants, a bond is required.

## IV.    CONCLUSION

For the reasons above, and incorporated by reference from Defendants' Motions to Dismiss (ECF Nos. 59, 60), Plaintiff's Motion for Preliminary Injunction (ECF No. 8) should be denied.

Dated:  October 8, 2025                                    Respectfully Submitted,

                                                                        **WHITE & CASE LLP**

                                                                        */s/ Zachary B. Dickens*
                                                                        Zachary B. Dickens
                                                                        Florida Bar No. 98935

Southeast Financial Center
200 South Biscayne Blvd., Ste. 4900
Miami, FL 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
E-mail: zdickens@whitecase.com

*Counsel for Defendants National
Association of REALTORS®, Beaches MLS,
Inc., Broward, Palm Beaches and St. Lucie
REALTORS®, Inc., Miami Association of
REALTORS®, Orlando Regional
REALTOR® Association, Inc., Florida Gulf
Coast Multiple Listing Service, Inc., Royal
Palm Coast REALTOR® Association, Inc.,
Space Coast Multiple Listing Service, Inc.,
Space Coast Association of REALTORS®,
Inc., Northeast Florida Multiple Listing
Service, Inc. (d/b/a realMLS), Inc.,
Northeast Florida Association of
REALTORS®, Inc., Central Panhandle
Association of REALTORS®, Inc.,
Connecticut Association of REALTORS®,
and West and Southeast REALTORS® of the
Valley, Inc.*

**GRAY | ROBINSON, P.A.**

*/s/ John A. Boudet*
John A. Boudet
Florida Bar No. 515670

301 East Pine Street, Suite 1400
Orlando, FL 32801
Telephone: (407) 843-8880
Facsimile: (407) 244-5690
E-mail: john.boudet@gray-robinson.com

*Counsel for Defendant My Florida Regional
MLS, Inc. d/b/a Stellar MLS*
**BILZIN SUMBERG BAENA PRICE &
AXELROD, LLP**

*/s/ Lori P. Lustrin*
Lori P. Lustrin, Esq.
Florida Bar No. 59228
Robert W. Turken, Esq.

Florida Bar No. 306355
Scott N. Wagner, Esq.
Florida Bar No.: 51662

1450 Brickell Avenue
Suite 2300
Miami, Florida 33131
Telephone: (305) 374-7580
Facsimile: (305) 351-2265
E-mail: rturken@bilzin.com
E-mail: swagner@bilzin.com
E-mail: llustrin@bilzin.com
E-mail: stapanes@bilzin.com
E-mail: ekravets@bilzin.com
E-mail: eservice@bilzin.com

*Counsel for Defendant Naples Area Board
of REALTORS® and Association of Real
Estate Professionals, Inc. (NABOR)*

**MANATT, PHELPS & PHILLIPS, LLP**

*/s/ Bezalel Adin Stern*
Bezalel Adin Stern
Florida Bar No. 110447
Dylan M. Carson (*pro hac vice*)
1050 Connecticut Ave NW
Ste 600
Washington, DC 20036
Telephone: 301-922-5039
E-mail: bstern@manatt.com
E-mail: dcarson@manatt.com

Annie K. Nguyen (*pro hac vice*)
7 Times Square
New York, NY 10036
Telephone: (212) 790-4500
E-mail: anguyen@manatt.com

*Counsel for Defendant Smart MLS, Inc.*