UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-81016-CIV-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

      Plaintiff,

vs.

NATIONAL ASSOCIATION OF
REALTORS, *et al.*,

      Defendants.

_____/

**DECLARATION OF RODNEY GANSHO IN SUPPORT OF DEFENDANTS'**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Rodney Gansho, do hereby declare and state as follows:

1.     I am the Senior Director of Engagement at the National Association of REALTORS® ("NAR"). I have personal knowledge of the facts contained herein, and if called as a witness, I could and would testify competently thereto.

2.     NAR is a trade association for real estate professionals. Only members of NAR are permitted to call themselves REALTORS®.

3.     NAR membership is composed of residential and commercial real estate brokers, agents, salespeople, property managers, appraisers, counselors, and others engaged in the real estate industry. Members belong to one or more of approximately 1,200 local associations/boards and 54 state and territory associations of REALTORS®.

4.     State and local associations of REALTORS® are independently incorporated entities and have separate governing rules and bylaws.

5.      NAR develops standards for efficient, effective, and ethical real estate business practices, including through its Code of Ethics and Handbook on Multiple Listing Policy.

6.      NAR grants each association and board the right to use the trademark terms "REALTOR®" and "REALTOR-ASSOCIATE®" within its territorial jurisdiction.  In turn, the state associations and local boards and associations agree to:

a. accept the charge of properly granting and regulating the use of the terms "REALTOR®" and "REALTOR-ASSOCIATE®";

b. subscribe to the Code of Ethics of the National Association; and

c. uphold and enforce the Code of Ethics within the board's/association's jurisdiction.

7.      The NAR Code of Ethics and Standards of Practice establishes ethical duties that all REALTORS® agree to follow as a condition of their membership.  These standards are instrumental in the orderly functioning of the real estate market and ensure a high level of service and professionalism among real estate professionals and their clients/customers.

8.      NAR published the Thirty-Sixth Edition of the Handbook on Multiple Listing Policy in March 2025.  This Handbook is intended to guide member associations of REALTORS® in the operation of multiple listing services ("MLSs") consistent with the policies established by the National Association's Board of Directors.  Attached hereto as **Exhibit 1** is the Handbook, which is available to the public at https://www.nar.realtor/sites/default/files/2025-05/PDF-HMLP-2025-Handbook-on-Multiple-Listing-Policy-2025-05-30.pdf.

9.      An MLS is a private database that is created, maintained, and paid for by real estate professionals to help their clients buy and sell property.  An MLS allows agents to efficiently see homes for sale and get helpful marketplace data, which provides a single location where buyers (through their agents) can search available listings and sellers (through their agents) can publicize

their property to a large number of in-market buyers. MLSs also typically share listing information to national and local websites that advertise property information. Because of the efficiency of the system, the vast majority of real estate transactions take place through an MLS. These MLSs are usually owned and operated by local REALTOR® associations or their wholly owned subsidiaries. Thus, depending on the jurisdiction, either a local REALTOR® association or MLS itself is responsible for enforcing MLS related rules.

10.     MLSs adopt rules to establish, among other things, the types of information about each listing that an agent must share with other members of the MLS.

11.     NAR's Handbook on Multiple Listing Policy contains model rules and policies that MLSs can adopt. The Handbook contains four categories of model rules: mandatory, optional, recommended, and informational. The MLS Handbook also contains "Policy Statements," which are the guiding principles related to MLS operations, and are further reflected in the model rules and locally adopted MLS rules and regulations for Participants and Subscribers.

12.     State and local REALTOR® associations and REALTOR® association-owned MLSs are required to follow mandatory rules and policies to maintain their affiliation with NAR and insurance coverage under NAR's master professional liability insurance program. They do so by adopting and enforcing their own rules and regulations. Therefore, "enforcement" is different for each state and local REALTOR® association and MLS. Compliance with NAR's standards means adopting and having a system in place for enforcing required policies, rules, and standards.

13.     State REALTOR® associations do not typically own or operate MLSs, with a couple exceptions found in Maine and Rhode Island. Instead, State REALTOR® associations act as intermediaries and service providers between NAR and the local REALTOR® associations, including assuming responsibility for reviewing and enforcing Code of Ethics violations.

14.     Enforcement of the MLS rules by local REALTOR® associations and/or MLSs is a unique process handled on a case-by-case basis.  Generally, enforcement includes receiving a complaint of a suspected violation, conducting an investigation, and making an adjudication, along with taking disciplinary actions when necessary.

15.     Fundamental to fair and consistent enforcement is reasonable and judicious use of discipline, as both an educational device and as punishment.  Associations and their MLSs have a wide variety of sanctions available to them that may be imposed for violations.  These range from simple letters of warning to termination of MLS rights and privileges.  Between these extremes are mandatory attendance at remedial education sessions, financial penalties, probation, and suspension, among other things.

16.     I have reviewed the NAR Handbook and identified what Plaintiff has defined as the IDX Listing Display, Buyer-Broker Agreement, and Non-Filtering Rules.  I have reproduced the current versions of these rules below, which are currently in effect:

a.  **IDX Listing Display Rule**: Plaintiff cites the following Policy Statement:  "An MLS Participant's IDX display must identify the listing firm, and the email or phone number provided by the listing Participant in a reasonably prominent location and in a readily visible color and typeface not smaller than the median used in the display of listing data." (Policy Statement 7.58).  The mandatory rule that corresponds with this Policy Statement is Section 18.2.12.

b.  **Buyer-Broker Written Agreement Rule**: Plaintiff cites the following Policy Statement:  "Unless inconsistent with state or federal law or regulation, all MLS Participants working with a buyer must enter into a written agreement with the buyer prior to touring a home. The written agreement must include:

4

     i.   a specific and conspicuous disclosure of the amount or rate of compensation the Participant will receive or how this amount will be determined, to the extent that the Participant will receive compensation from any source;

    ii.   the amount of compensation in a manner that is objectively ascertainable and not open-ended;

   iii.   a term that prohibits the Participant from receiving compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer; and

   iv.   a conspicuous statement that broker fees and commissions are not set by law and are fully negotiable." (Policy Statement 8.13).  The mandatory rule that corresponds with this Policy Statement is Section 5.0.2.

c.  **Non-filtering Rule**: Plaintiff cites the following Policy Statement:  "MLS Participants and Subscribers must not, and MLSs must not enable the ability to, filter out or restrict MLS listings that are communicated to consumers or clients based on the existence or level of compensation offered to the cooperating broker or the name of a brokerage or agent." (Policy Statement 8.5).  The mandatory rule that corresponds with this Policy Statement is Section 4.6.  The Non-Filtering Rule applies only to public, consumer-facing websites and communications, not the professional tools brokers use to access MLS data.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 8, 2025

Rodney Gansho