# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

FILED BY _Cᗺ_ D.C.

OCT 1 7 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Jorge A. Zea (Pro Se)          )
                               )
                               )
              Plaintiff,       )
                               )
                               )
              V.                )
                               )
                               )
National Association of        )          Case No. 25-cv-81016-WPD
REALTORS®, et, al.             )
                               )
                               )
                               )
              Defendants.      )
_____ )

## PLAINTIFF'S OPPOSITION TO DEFENDANTS CONNECTICUT ASSOCIATION OF REALTORS®, WEST AND SOUTHEAST REALTORS® OF THE VALLEY, AND SMART MLS, INC.'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

Plaintiff, acting Pro Se, respectfully files this Brief in Opposition to

Defendants' Motion To Dismiss the Complaint for Lack of Personal Jurisdiction and

Forum Non Conveniens by Defendants Connecticut Association of REALTORS®, Inc.

("CT REALTORS®"), West and Southeast REALTORS® of the Valley, Inc.

("WeSERV"), and Smart MLS, Inc. ("Smart MLS")  (ECF No. 60).

Plaintiff opposes Defendants' arguments because this court has proper jurisdiction and is the appropriate venue and forum for these 3 defendants in this particular case - as it is for all other Defendants who have not contested jurisdiction. (when Plaintiff refers to "Defendants" in the context of this brief, he refers to the 3 moving Defendants in this motion).

## I.        INTRODUCTION.

Defendants expressly agree and concede, as stated in their own filing, that *Plaintiff is an individual real estate broker residing and operating in Florida who brings this action in his personal capacity* (ECF No. 60 at 1). This is not a casual observation; it is a binding judicial admission that locates the injury, the economic impact, and the continuing harm squarely within this District.

The only relevant question here is whether these Defendants, by their continued participation in a coordinated national restraint, purposefully directed their conduct toward a Florida resident and thereby caused ongoing harm in this forum.

Defendants' own description of Plaintiff answers that question. Harm intentionally directed at an individual Florida resident, and foreseeably felt within this District, satisfies the requirements of personal jurisdiction. Moreover, this District is not an unfamiliar or inconvenient forum - it is the same federal venue expressly accepted by the National Association of REALTORS® and other co-defendants for litigation, filings, and enforcement matters. Defendants cannot selectively embrace this forum when convenient and repudiate it when accountability is at stake.

Further, two of the three moving defendants - CT REALTORS® and WeServe - share the same Florida counsel; and all three have jointly filed consolidated motions in this very forum. That shared representation and coordinated defense effort make this venue not only convenient but more efficient for all parties involved. Having already elected to appear, coordinate, and litigate here through common counsel, these defendants cannot plausibly claim that Florida presents any genuine inconvenience or unfairness.

Filing this action in any other forum would invert the very purpose of the *forum non conveniens* doctrine. Forcing a Florida resident to pursue redress elsewhere would constitute *forum non conveniens* toward the Plaintiff, not the Defendants. The doctrine runs both ways: it exists to prevent forum manipulation and to ensure fairness, not to insulate coordinated participants in a nationwide restraint from being held to account in the very forum where their conduct causes injury - and where all other conspirators are already properly before this Court. It would be both inefficient and inequitable to carve out a separate venue for these three defendants when only SmartMLS has elected to be represented by out-of-state counsel from Washington, D.C., while CT REALTORS® and WeSERV are already represented by the same Florida counsel who appears for multiple defendants in this case and defends the same coordinated conduct in this District.

## II.        OPPOSITION ARGUMENTS

Plaintiff concedes that the concept of General Jurisdiction is not relevant in this particular case, but specific Personal Jurisdiction is applicable, and amply and clearly confirms this court as proper jurisdiction.

### A.   Defendants Have Purposefully Availed Themselves of This Forum Through Their Litigation Conduct

Defendants' litigation strategy presents a fundamental contradiction: they affirmatively invoke this Court's authority to seek dispositive relief while simultaneously denying the Court's jurisdiction over them. This is not how jurisdiction - or fairness - works. A party cannot wield a court's power as a sword and then disclaim its authority as a shield.

By voluntarily joining a coordinated defense all other defendants - filing consolidated dispositive motions and sharing Florida-based counsel - these Defendants have integrated themselves into this forum's litigation. They do not ask this Court to merely decline jurisdiction; they ask it to exercise its ultimate judicial power to terminate *with prejudice* Plaintiff's case against them via this Motion (ECF No.60) and against all via their Joint Motion to Dismiss (ECF No 59). This coordinated offensive use of the Court's processes is the antithesis of the "random, fortuitous, or attenuated contacts" that would make jurisdiction unfair. *Madara v. Hall,* 916 F.2d 1510, 1516 (11th Cir. 1990).

This conduct constitutes the very definition of purposeful availment. As the Supreme Court held in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76 (1985), "where a defendant deliberately has engaged in significant activities within a state... he manifestly has availed himself of the privilege of conducting business there." Having

chosen to engage with this forum so deeply, Defendants cannot now retreat. Fairness demands reciprocity: a party that seeks the benefit of a court's rulings must also accept the Court's power to hold it to account.

This contradiction is compounded by their reliance on procedural informalities. Defendants' suggestion that jurisdiction fails because Plaintiff did not cite a specific subsection of Fla. Stat. § 48.193 is misplaced. As the Northern District of Florida explained, "With respect to those points of the competing affidavits that do not conflict... the Court may accept as true the applicable allegations in the complaint for the purposes of resolving jurisdictional issues." *Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1119 (N.D. Fla. 2007). Plaintiff's detailed factual allegations, taken as true, amply satisfy the pleading standard for personal jurisdiction.

Thus, even without citing the statute by number, Plaintiff's detailed factual applicable allegations satisfy the pleading standard for personal jurisdiction under Florida's long-arm statute.

### B.     The Florida Long-Arm Statute Is Satisfied

Under Florida's long-arm statute, Florida courts have specific personal jurisdiction over a non-resident where the asserted cause of action "arises from" that defendant's "conducting" or "carrying on" business in this state. Fla. Stat. § 48.193(1)(a)(1). Here, jurisdiction exists in more than one independent way.

*First*, all three Defendants expressly acknowledge that Plaintiff is a Florida resident, a licensed Florida real estate broker. SmartMLS knowingly maintains Plaintiff's active membership with a Florida-registered address. Its rules, policies, and IDX

procedures directly govern Plaintiff's individual rights, duties, and access to MLS data - core elements of Plaintiff's professional activity in Florida. These are not passive "publications," as Defendants suggest. They are binding operational rules and procedural regulations that SmartMLS collectively adopts, enforces, and chooses not to enforce. Those policies are directed at - and admittedly known to affect - a Florida resident. When a foreign MLS deliberately imposes or withholds regulatory obligations that control the daily activities of a Florida broker, it is engaging in conduct that constitutes "carrying on a business" with direct effects on Florida commerce.

*Second*, these actions were neither accidental nor isolated. SmartMLS's decisions - particularly its coordinated non-enforcement of rules designed to prevent anticompetitive conduct - caused harm here in Florida, not in Connecticut. Jurisdiction therefore attaches under § 48.193(1)(a)(2), which extends to any nonresident who commits a tortious act outside the state that causes injury within Florida. *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1353 (11th Cir. 2013) (holding that out-of-state conduct causing in-state injury satisfies Florida's long-arm statute).

*Third,* As voting members of NAR's national governance structure, which promulgates rules intentionally designed to have uniform, nationwide effect, Defendants CT REALTORS® and WeSERV could reasonably anticipate that their collective actions would cause effects in any state where NAR members operate, including Florida. When their coordinated conduct injures a Florida resident in Florida, it is entirely foreseeable that the injury would be felt here and that jurisdiction would lie here. They cannot invoke that collective power to impose rules upon Florida individual brokers yet disclaim this

Court's jurisdiction when those rules and omissions cause harm within Florida. The structure they rely upon to legislate industry-wide standards is the same structure that makes their conduct reach this forum.

Moreover, by hearing and issuing dispositive decisions on ethics complaints brought before these associations, Defendants have further availed themselves of this forum by directly affecting a Florida resident through their collective disciplinary actions. Additionally, CT REALTORS®' outsourcing of its ethics process and disposition to a third state for a complaint filed by a Florida resident cannot insulate it - or Arizona WeSERV - from jurisdiction. If such conduct were permitted, it would render it impossible for any REALTOR® to seek redress, forcing professionals to chase jurisdictions around the country for unilateral decisions made by associations that both remit and receive cases while disclaiming responsibility in each.

Defendants' analogy to a distant association that merely mails publications to its members misses the point entirely. This is not the passive receipt of newsletters; it is the active exercise of regulatory power over a Florida resident. To hold that Defendants may impose enforceable obligations upon Florida brokers while avoiding judicial accountability in Florida would invert the statute and nullify its purpose. Having reached into this state to regulate, discipline, and affect the professional conduct of a Florida Realtor®, Defendants have "carried on a business" and "committed acts causing injury" within the meaning of § 48.193.

Accordingly, Plaintiff's claims arise directly from Defendants' coordinated actions directed toward Florida, and the statutory requirements for specific personal jurisdiction are met.

**C.   Jurisdiction is Constitutionally Sound: Defendants' Purported Burden is Outweighed by Florida's Paramount Interest and Judicial Efficiency**

The constitutional due process analysis confirms that haling these Defendants into a Florida court is both reasonable and fair. The following factors demonstrate that jurisdiction fully comports with 'traditional notions of fair play and substantial justice.' Madara, 916 F.2d at 1516.

**1. Minimum Contacts and Purposeful Direction**

Each Defendant deliberately established continuing obligations with Florida through intentional, non-random conduct. SmartMLS knowingly maintains Plaintiff's Florida-registered individual membership and applies rules that govern his personal operations here. Critically, CT REALTORS® and WeSERV actively participate in NAR's national rulemaking and enforcement structure, voting on the very policies that dictate how SmartMLS and other MLSs must treat Florida brokers. These are not passive memberships; they are deliberate acts of governance that exert control over the Florida market and create foreseeable effects within this state. As the Supreme Court held, a defendant who "deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum," has purposefully availed itself of that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

### 2. The Burden on Defendants is Minimal and Self-Imposed.

Defendants' claim of hardship is illusory. Two of the three moving Defendants (CT REALTORS® and WeSERV) are represented by the same Florida-based counsel who represents multiple co-defendants and is already litigating the core issues in this District. Smart MLS has chosen to hire out-of-state counsel, a burden of its own making that cannot defeat jurisdiction. Having already engaged this forum to file substantive dispositive motions, they cannot credibly claim that defending here is "gravely difficult."

### 3. Florida's Interest is Paramount.

Florida has a compelling interest in providing a forum for one of its residents - a licensed Florida real estate broker - to obtain relief for antitrust injuries sustained within its borders. "The state... has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King,* 471 U.S. at 473.

### 4. The Most Efficient Resolution of the Controversy.

The Eleventh Circuit considers this the most important factor. *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990). Splitting this single antitrust conspiracy case into multiple forums would be the height of inefficiency. This Court is already presiding over the core of the litigation against numerous defendants. Forcing Plaintiff to litigate an identical claim against these three Defendants in a separate court would waste judicial resources and create a risk of inconsistent rulings. The most efficient resolution is to keep

all participants - in the coordinated restraint - together in the forum where the primary injury was felt.

Therefore, exercising personal jurisdiction over these Defendants is entirely consistent with "traditional notions of fair play and substantial justice." *Madara,* 916 F.2d at 1516.

### D.      The Clayton Act Extends Jurisdiction to Conduct Precisely Like This

Defendants' argument under the Clayton Act is internally inconsistent. The Sherman Act requires interstate conduct—it exists to prevent coordinated restraints of trade that operate across state lines. Yet Defendants now claim that because their conduct spans multiple states, they are immune from being sued in one. That interpretation would nullify the very reach Congress intended the antitrust laws to have.

Section 12 of the Clayton Act, 15 U.S.C. § 22, expressly allows an antitrust action to be brought "in any district wherein [a corporation] may be found or transacts business," and authorizes nationwide service of process. The Supreme Court has held that "transacts business" under § 22 is to be understood in its "practical, everyday business or commercial concept," not in any narrow or technical sense. *United States v. Scophony Corp. of Am.,* 333 U.S. 795, 807 (1948). The statute was designed to reach precisely those corporate combinations that, through coordinated interstate activity, cause injury in multiple markets.

SmartMLS, CT REALTORS®, and WeSERV all transact business of substantial character within the meaning of § 22. Each participates in a national enterprise governed by uniform rules promulgated by NAR - rules that dictate professional conduct,

regulatory structures, IDX display standards, and membership conditions (amongst others) for Realtors® in every state, including Florida. Their conduct is not peripheral to this District; it regulates and materially impacts the daily business of Plaintiff, a Florida broker and Realtor® whom Defendants acknowledge to be a Florida individal.

Defendants cannot claim jurisdictional immunity by asserting that their anticompetitive conduct is too geographically broad to be reached by the very statute designed to reach it. To do so would transform interstate coordination into a shield against federal enforcement, inviting precisely the kind of nationwide restraint the Sherman and Clayton Acts were enacted to prevent. The breadth of Defendants' coordinated activity does not defeat jurisdiction - it confirms it.

Accordingly, jurisdiction under § 22 of the Clayton Act is both proper and necessary to prevent Defendants from using the reach of their own combination to place themselves beyond judicial scrutiny.

### E.   Defendants' Reliance on the So-Called Participation Agreement Collapses by its Own Weight

The declarant, Mr. Elson (Chief Operating Officer of SmartMLS), merely states that "a true and correct copy" of the agreement is attached as Exhibit A (*see* Ex. A to Elson Decl., ECF No. 60-4) and that "a screenshot" of SmartMLS's database showing Plaintiff's assent is attached as Exhibit B (*see* Ex. B to Elson Decl., ECF No. 60-4 at 1–11). Neither exhibit establishes that any agreement was ever executed or that Plaintiff agreed to it; and Exhibit A is not linked or a connection demonstrated to Exhibit B in any way.

Exhibit A is a blank, unsigned template with no name, signature, timestamp, or digital acceptance record (no IP-address log, audit trail or possible signature identity verification or validating information).

Exhibit B - the "screenshot" relied upon to cure this deficiency (which appears to have two screenshots combined via insertion (copy and paste)) casts even deeper doubts - it also contains no authentication, no click through validation, no evidence how (if) the alleged information was presented and when and to whom, no metadata, no indication of when or by whom it was captured, and no technical explanation of how it allegedly confirms agreement. Plaintiff can't discern any connection between Exhibit A and Exhibit B, and Defendant just expects the court to guess what it all means and to infer a possible connection.

Such materials are not competent evidence under Rule 12(b)(2). See *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1546 (S.D. Fla. 1996) (unauthenticated documents are not competent evidence and cannot support a motion to dismiss). Even taking Defendants' materials at face value and inferring a connection between the Exhibits, the screenshot merely reflects that on August 16, 2024, Plaintiff *"acknowledged" receipt of some updated terms* (but not which) - an acknowledgment that, by definition, is not an "agreement." No evidence of electronic signature, IP-address log, user verification, or consent text accompanies the submission.

Defendants' presentation ignores basic eDiscovery standards that govern modern electronic evidence. A blank unsigned and undated, not verifiable form and single static screenshot, unverified and unaccompanied by metadata or a

system-generated audit trail, fails even the most basic threshold for authentication. By attempting to blend eDiscovery concepts with decades-old paper-production practices, Defendants reveal not diligence but a lack of intent to provide, as expected by the court, robust, verifiable support for their contentions.

This deficiency also reflects a troubling lack of attorney supervision in the preparation and submission of evidence - an issue this Court has expressly cautioned against. *See* In re *Abilify (Aripiprazole) Prods.* Liab. Litig., No. 3:16-md-2734, 2018 WL 4856767, at *2 (N.D. Fla. Oct. 5, 2018) ("Attorneys must directly supervise and oversee discovery responses and cannot delegate those obligations without ensuring accuracy and completeness.").

Because Defendants have failed to present any authenticated or admissible evidence establishing a binding agreement, their jurisdictional argument grounded in that document, must fail. In the absence of competent proof, the Court must accept Plaintiff's allegations as true and resolve all inferences in Plaintiff's favor. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

### G.     The Claimed Forum-Selection Clause Is Permissive and Does Not Bar This Action

Even assuming the Participation Agreement were valid and enforceable - which it is not - the forum-selection clause Defendants rely upon is plainly permissive, not mandatory. The relevant language from the Participation agreement (see Ex. A to Elson Decl., ECF No. 60-4 at p. 10 of 11)

> "Participant voluntarily submits and consents to, and waives any defense to the jurisdiction of courts located in the state of

Connecticut, as to all matters relating to or arising from this Agreement."

That clause does not say that actions shall be brought only or exclusively in Connecticut. It does not use the words "sole," "exclusive," or "only" - the very terms that transform a consent clause into a mandatory one. Instead, it merely provides that Plaintiff will not contest jurisdiction if sued there. It waives a defense; it does not waive the right to file elsewhere. In short, it is a one-way courtesy, not a bar.

The irony is unmistakable. SmartMLS knows perfectly well how to write an exclusive clause when it intends to. For example, in another of its own contracts - the Smart MLS RETS Data Access Agreement rev. 9-17 (Exhibit 1)[1] - SmartMLS drafted the following:

> "Consultant hereby agree on behalf of themselves and any person claiming by or through them that *the sole and exclusive jurisdiction* and venue for any litigation arising from or relating to thisAgreement or the subject matter hereof shall be an appropriate federal or state court located in Connecticut." (emphasis added)

That is a mandatory clause. The contrast is not subtle; it is dispositive. SmartMLS intentionally wrote two different contracts with two different jurisdictional intentions. It knew precisely how to make one exclusive - and deliberately chose not to here.

Under Eleventh Circuit precedent, only clauses containing "clear language showing that jurisdiction is appropriate only in the designated forum" are mandatory. *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir.

---

[1] See RETS DATA ACCESS AGREEMENT by SmartMLS at: https://smartdesk.smartmls.com/hc/article_attachments/360086394631/RETS-Data-Access-Agreement-rev1117.pdf , last accessed on Oct 17th 2025 at 11:49 AM EST)

2004). Where, as here, the clause simply consents to jurisdiction, it "permits jurisdiction" there but "does not make that jurisdiction exclusive." Id.; *see also Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).

As the Supreme Court confirmed in *Atlantic Marine Constr. Co. v. U.S. Dist. Court, 5*71 U.S. 49, 62–63 (2013), only forum-selection clauses that "clearly designate one exclusive forum" warrant dismissal or transfer. This clause does not. It is permissive by design — and the design was no accident.

Even if the clause were ambiguous, any uncertainty must be construed against its drafter. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *RLI Ins. Co. v. Hartford Accident & Indem. Co.*, 980 F.2d 120, 122 (11th Cir. 1993). Because SmartMLS drafted the Participation Agreement, any doubt as to whether the forum clause is mandatory or permissive must be resolved against it

Accordingly, even if the Participation Agreement were valid, the clause it contains cannot deprive this Court of jurisdiction. SmartMLS drafted it that way, knowingly and purposefully.

### H.   The Forum-Selection Clause Is Unconscionable and Therefore Unenforceable

Even if the Court were to find the clause valid and mandatory - which it is not - it would still fail because it is both procedurally and substantively unconscionable.

*Procedural Unconscionability*. The forum-selection clause in the Participation Agreement arises from a classic contract of adhesion. SmartMLS operates as the sole statewide multiple listing service in Connecticut, effectively holding

monopoly control over access to that market. Plaintiff, a Florida-based real estate professional, had no meaningful choice but to accept the *"take-it-or-leave-it"* terms as a condition of participation. Access to MLS data is essential to conduct real estate brokerage; refusal would mean exclusion from the market altogether. This gross disparity in bargaining power - the hallmark of adhesion - renders the clause procedurally unconscionable. The alleged (and unproven) "assent" was not a voluntary, negotiated agreement, but a coerced condition imposed by a dominant market gatekeeper. Federal courts are obliged to scrutinize such oppressive circumstances, as both antitrust policy and contract law forbid a monopolist from forcing unreasonable or coercive terms upon those dependent on its services.

 *Substantive Unconscionability.* The clause is also substantively unconscionable because it is one-sided, punitive, and inconsistent with fundamental fairness. It requires a Florida resident to litigate an antitrust claim - a claim arising from conduct directed toward Florida - in a distant forum hundreds of miles away, under terms that impose disproportionate cost and burden. Such a clause operates functionally as an exculpatory provision, insulating SmartMLS from accountability by making redress impractical. When combined with the absence of bargaining parity, this geographic and financial burden is so unreasonable that it "shocks the judicial conscience."

 The Supreme Court has long held that a forum-selection clause may be invalidated when "the inclusion of the clause in the contract was the product of fraud or overreaching" or when enforcement "would be unreasonable and unjust." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Eleventh Circuit has applied the same

principle, recognizing that clauses imposed through superior bargaining power and economic coercion are unenforceable. *See Rucker v. Oasis Legal Finance, LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). This is such a case: a market-controling entity compelled adhesion to an unfair clause, knowing participants had no viable alternative.

For these reasons, the forum-selection clause - if deemed valid - should still be declared unenforceable for unconscionability, allowing this action to proceed in the forum where the injury occurred and where fairness can be meaningfully served.

**III.      Defendants' Litigation Conduct Warrants Denial of Their Motion**

As Magistrate Judge Matthewman has emphasized in this District, "the efficient and just resolution of cases depends on counsel working cooperatively and in good faith," and the Court "expects nothing less than professionalism, candor, and civility in every conferral." *See, e.g., Perez v. Miami-Dade County*, No. 20-cv-25176, ECF 61 (S.D. Fla. Apr. 14, 2021).

While Plaintiff expects no special deference for representing himself, he does expect candor and good faith from opposing counsel. Defendants have violated this duty, and their litigation conduct mirrors the anticompetitive scheme alleged in the Complaint: they invoke norms as a shield but disregard them as a sword.

This is exemplified by their conferral for this motion. Counsel voluntarily (not required for Motions under Rule 12(b)(2)) initiated discussions, representing they sought dismissal *"without prejudice"* and even offering unsolicited advice that Plaintiff could *"refile in Connecticut"*.

Relying on this representation, Plaintiff understood the issue to concern venue. Nevertheless, Defendants filed for dismissal *with prejudice* - a substantive, case-ending remedy. This *bait-and-switch* reflects a deliberate manipulation of the conferral process. If Defendants always intended to seek dismissal with prejudice, there was no reason to confer while insisting the motion would be limited to dismissal without prejudice. The only plausible purpose of such a conferral was to mislead and to circumvent the candor and good faith that this Court's rules demand, and Plaintiff expects.

Here, counsel's voluntary conferral carried an implicit representation of fairness. Having violated that expectation, Defendants' motion should be viewed with appropriate skepticism as to both motive and credibility.

Furthermore, this pattern of making misleading representations to gain tactical advantage, evident in prior filings, demonstrates a fundamental disregard for procedural integrity. A party who engages in such conduct has forfeited any claim to the equitable relief they seek from this Court, and their motion should be denied.

## IV.        CONCLUSION

Jurisdiction over these three defendants is not only proper - it is necessary. Each Defendant has already engaged in conduct within this forum that reflects both purposeful participation and a lack of candor to the Court - behavior evident not only before the filing of this Complaint but continuing throughout this litigation.

As detailed in Plaintiff's Reply in Support of the Motion for Preliminary Injunction (ECF No. 63 at 2), SmartMLS submitted a declaration with this Motion (see

ECF 60-6 Elson Decl., 11-15 and its Exhibit C pp. 38-39) that materially mischaracterized its own rule revisions and simultaneously removed the prior version of those rules from public access after litigation commenced.

Connecticut REALTORS® and WeSERV, both represented by the same Florida counsel who appear for multiple defendants in this action, joined in coordinated filings and conferred jointly in a manner designed to obscure their independent roles and to support SmartMLS's misrepresentations.

These are not the actions of distant or uninvolved parties. They reflect deliberate participation in this forum - filing, conferring, and shaping the record - while attempting to disclaim the Court's authority over them. Jurisdiction cannot be defeated by conduct that itself relies on the Court's processes. Fairness and due process demand reciprocity: having invoked the Court's power when convenient, Defendants cannot now deny its reach when accountability follows.

The integrity of this proceeding depends upon the Court's ability to address these actions directly. The removal of material evidence, the filing of a misleading declaration, and the coordinated effort to extend those misrepresentations through overlapping motions all fall within the Court's supervisory responsibility. Jurisdiction over these defendants is therefore not only proper - it is essential to ensure fairness, accuracy, and the integrity of the record before this Court.

Their own litigation conduct confirms the very minimum contacts they now deny. *See, e.g., Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1217 (11th Cir. 1999) (a defendant's "participation in litigation [in the forum] without a compulsion appearance

may be a contact" for jurisdictional purposes). Their Motion to Dismiss for Lack of

Personal Jurisdiction should be denied."

Respectfully submitted on October 17th 2025, by

Jorge A Zea
Plaintiff, Pro Se

2234 N Federal Hwy
Boca Raton FL 33431
Phone: 305-244-7242

Email: antitrust@jorgezea.com

20

## Certificate of Service

I HEREBY CERTIFY that on October 17, 2025, a true and correct copy of the foregoing was hand-delivered to the Clerk of the United States District Court for the Southern District of Florida, West Palm Beach Division, for electronic filing through the CM/ECF system, which will automatically serve notice of this filing to all counsel of record.

Jorge A Zea,

Plaintiff, Pro Se

2234 N Federal Hwy PMB 68073
Boca Raton FL 33431
Phone: 305-244-7242

antitrust@jorgezea.com