UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81016-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

    Plaintiff,
v.

NATIONAL ASSOCIATION OF
REALTORS®, *et al.*,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [DE 8]

**THIS CAUSE** is before the Court upon Plaintiff Jorge A. Zea's ("Plaintiff") Motion for Preliminary Injunction and Supporting Memorandum of Law to Compel Defendants' Compliance with Their Own Binding Rules ("Motion") [DE 8]. This matter was referred to the Undersigned United States Magistrate Judge by the Honorable William P. Dimitrouleas, United States District Judge. *See* DE 14.

Defendants National Association of REALTORS® ("NAR"); Broward, Palm Beaches and St. Lucie REALTORS®, Inc.; Beaches MLS, Inc.; Miami Association of REALTORS®, Inc.; Orlando Regional REALTOR® Association, Inc.; Space Coast Multiple Listing Service, Inc.; Space Coast Association of REALTORS®, Inc.; Royal Palm Coast REALTOR® Association, Inc.; Florida Gulf Coast Multiple Listing Service, Inc.; Naples Area Board of REALTORS®, Inc.; My Florida Regional MLS, Inc. (d/b/a Stellar MLS); Northeast Florida Multiple Listing Service, Inc. (d/b/a realMLS); Northeast Florida Association of REALTORS®, Inc.; Central Panhandle Association of REALTORS®, Inc.; Connecticut Association of REALTORS®; Smart MLS, Inc.;

and West and Southeast REALTORS® of the Valley, Inc. (collectively, "Defendants") have filed a Response [DE 62], and Plaintiff has filed a Reply [DE 63]. Plaintiff and Defendants have also filed declarations in support of their briefs. *See* DEs 9, 62-1, 62-18, 62-20. The Motion is fully briefed and ripe for review.

## I.     BACKGROUND

Plaintiff Jorge A. Zea, a realtor and licensed real estate broker proceeding *pro se* in this case, filed a 122-page Complaint ["Compl.", DE 1] against Defendants on August 15, 2025. Defendants include NAR and 16 local REALTOR® associations and MLS providers. Compl. ¶¶ 27–46. Plaintiff is a licensed real estate agent and broker with Blue Lighthouse Realty, Inc. [DE 9-1 at 133]. Blue Lighthouse, Plaintiff's "innovative, non-traditional, low-cost real estate brokerage service," offers a fixed-fee listing service whereby property owners pay a one-time fee to list their property for sale. Compl. ¶ 19. Under Blue Lighthouse's business model, all leads received by Plaintiff are forwarded to the seller, and the seller coordinates showings, negotiates directly with buyers, and coordinates the sale of the property. Compl. ¶ 22.

NAR is a nationwide trade association in the real estate industry. Decl. of Rodney Gansho ("Gansho Decl.") ¶ 2, DE 62-18. NAR's membership consists of licensed real estate professionals—including brokers, sales agents, property managers, appraisers, and counselors—who belong to state and local REALTOR® associations across the country. *Id.* ¶ 3. NAR develops standards for efficient, effective, and ethical real estate business practices, including its Code of Ethics and Handbook on Multiple Listing Policy. *Id.* ¶ 5. This Handbook is a guide for local associations of REALTORS® regarding the operation of MLSs. *Id.* ¶ 8. The Handbook contains various tiers of model rules: mandatory, recommended, optional, and informational. *Id.* ¶ 11.

2

State and local associations of REALTORS® are independently incorporated entities (with separate governing rules and bylaws). *Id.* ¶ 4. State REALTOR® associations act as intermediaries between NAR and the local REALTOR® associations. *Id.* ¶ 13. Local associations (together as a group or through wholly owned subsidiaries) can own and operate MLSs but must abide by certain standards to use NAR's REALTOR® trademark and access professional liability insurance procured by NAR. *Id.* ¶¶ 9, 12. Those standards include enforcing the Code of Ethics and following all mandatory NAR policies and MLS rules in the Handbook. *Id.* ¶¶ 5, 6(c), 12. The local associations enforce the MLS rules on their members and are responsible for monitoring their members' compliance and for taking enforcement steps when violations occur. *Id.* ¶ 14. Because each association administers its own procedures, compliance questions are resolved individually, with violations determined on a case-by-case basis. *Id.* ¶¶ 12–14.

The Complaint alleges six counts, all based on antitrust violations brought under the Sherman Act, 15 U.S.C. § 1. More specifically, the Complaint alleges that Defendants have violated federal antitrust law by collectively refusing to enforce certain NAR rules that Plaintiff acknowledges protect competition. Compl. ¶¶ 8, 376–447. As it relates to Plaintiff's Motion, the Complaint alleges that Defendants have failed to enforce three of NAR's mandatory rules, including the: (1) "Non-Filtering Rule," prohibiting filtering of customer-facing listings by brokerage/agent or compensation offered (Policy Statement 8.5); (2) "IDX Display Rule," requiring that contact information for listing brokerages be displayed in online listings (Policy Statement 7.58); and (3) "Buyer-Broker Agreement Rule," mandating written agreements between MLS participants working with a buyer setting forth the terms of compensation (Policy Statement 8.13). Gansho Decl. ¶ 16. Plaintiff contends that Defendants' alleged refusal to enforce these pro-

3

competitive rules has competitively disadvantaged his discount-brokerage business. Compl. ¶¶ 21–26.

## II.      MOTION, RESPONSE, AND REPLY

### A.      Plaintiff's Motion [DE 8]

Plaintiff is seeking a preliminary injunction requiring Defendants to follow their own rules. [DE 8 at 1]. He claims that he exhausted private remedies before seeking judicial relief. *Id.* at 2. Plaintiff further argues that he has a substantial likelihood of success on the merits, he and the public will suffer irreparable harm absent an injunction, the balance of hardships favors an injunction, and the injunction is in the public interest. *Id.* at 5–17.

### B.      Defendants' Response [DE 62]

Defendants respond by arguing that Defendants already enforce the rules at issue, and, moreover, a court order requiring enforcement of said rules is improperly vague and lacking in specificity. [DE 62 at 5–8]. Next, Defendants contend that Plaintiff has not clearly established the elements required to obtain a preliminary injunction. *Id.* at 8–19. Finally, Defendants assert that Plaintiff fails to address the bond required for obtaining injunctive relief. *Id.* at 19–20.

### C.      Plaintiff's Reply [DE 63]

In reply, Plaintiff first alleges that Defendants' "own sworn declarations and exhibits eliminate any genuine issue of fact." [DE 63 at 2]. Next, Plaintiff claims that Defendants' argument that an order requiring enforcement of the rules is improperly vague actually constitutes a "confession of intentional non-enforcement." *Id.* at 5. He also maintains that he has clearly demonstrated each of the requisite elements for obtaining a preliminary injunction. *Id.* at 6–10. Additionally, Plaintiff requests that the "bond requirement be waived or, in the alternative, set at a nominal amount of one dollar ($1.00)" in light of the facts of this case. *Id.* at 11.

### III.    APPLICABLE LAW

A court is required to consider the following factors when determining whether preliminary injunctive relief is to be granted: "whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995)).

"Because a preliminary injunction 'is an extraordinary and drastic remedy' relief may not be granted 'unless the movant clearly established the burden of persuasion as to the four requisites.'" *Callahan v. United States Dep't of Health & Hum. Servs. through Alex Azar II*, 939 F.3d 1251, 1257 (11th Cir. 2019) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). A showing of irreparable injury is "'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990)). Even if a plaintiff can "establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.

### IV.    ANALYSIS

As an initial matter, the Court finds that an evidentiary hearing on the Motion is not necessary. "An evidentiary hearing is required for entry of a preliminary injunction only 'where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue.'" *Bonilla v. Librati*, No. 1:21-CV-21588-KMM, 2022 WL 2805254, at *3 (S.D. Fla. Mar. 15, 2022) (citing *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304

F.3d 1167, 1178 (11th Cir. 2002)). Here, the facts are not bitterly contested, and no credibility determinations must be made.

Next, because the Motion must be denied if Plaintiff has not clearly established that irreparable injury will be suffered if the relief is not granted, the Court will consider that element first.

According to the Motion, Plaintiff became aware of Defendants' alleged non-enforcement of the NAR rules in 2021 and initially believed that "the Burnett litigation"[1] would resolve the issue. [DE 8 at 2]. When the issue was not resolved in 2024, at the conclusion of the Burnett litigation, Plaintiff claims he "spent the following year pursuing private remedies—filing ethics complaints, submitting compliance requests, and engaging Defendants directly via email and conversations." *Id.* Plaintiff cautions that the Court "should not mistake Plaintiff's years of restraint and multiple direct resolution attempts for a lack of urgency. To the contrary, this history demonstrates the exact good-faith exhaustion of alternatives that precedes a necessary request for judicial intervention." *Id.* at 3. He further claims that for "months prior to filing this action, [he] engaged in a voluminous, good-faith effort to persuade Defendants to simply comply with and enforce their own binding, pro-competitive rules." *Id.* Plaintiff has filed with the Court certain emails addressed to some of the Defendants to establish his attempts to resolve the enforcement of the rules. [DE 9-1, Exs. 3.4, 3.5, 3.6, 3.7, 3.8, 4.1, 4.2, 4.3, 4.4]. The first emails are dated September 2024, and they span into 2025.

---

[1] Plaintiff does not further explain what the Burnett litigation is in the Motion; however, in their Response, Defendants argue that "Plaintiff is also unable to challenge the buyer-broker agreement rule, which, as Plaintiff admits, was implemented as part of a class action settlement of litigation against NAR in the Western District of Missouri. *See Burnett, et al. v. Nat'l Ass'n of REALTORS®, et al.*, No. 19-cv-332 (W.D. Mo. Apr. 19, 2024), ECF No. 1458-1." [DE 62 at 16]. According to Defendants, "[t]hat settlement received final approval on November 27, 2024, and the practice changes went into effect in August 2024. *Id.* at ECF No. 1622. Because the Western District of Missouri approved the practice changes and retained jurisdiction over the settlement, any alleged enforcement issues related to the buyer-broker agreement rule are subject to final approval by that court." *Id.*

Plaintiff filed his Motion on August 27, 2025. Thus, he waited almost a full year between drafting his first emails to certain Defendants and filing the Motion. This delay significantly undermines his assertion of irreparable harm. Injunctive remedies "will generally not be granted in favor of one who, with full knowledge of what is being done or with the means of acquiring such knowledge, acquiesces or delays in asserting rights until the defendant is in a position that he or she can alter only with great damage." 42 Am. Jur. 2d Injunctions § 44(II)(e) (2025). "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.,* 840 F.3d 1244, 1248 (11th Cir. 2016). Preliminary injunctions are "premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (affirming district court's denial of preliminary injunction where plaintiff failed to prove an imminent irreparable harm after waiting five months to move for injunctive relief). "When there has been delay in seeking injunctive relief, courts look to whether the moving party has reasonably justified the delay." *Sprint Commc'ns, Inc. v. Calabrese*, No. 18-60788-CIV, 2018 WL 6653079, at *5 (S.D. Fla. July 5, 2018), *report and recommendation adopted,* No. 18-60788-CIV, 2018 WL 6653070 (S.D. Fla. Nov. 7, 2018) (denying preliminary injunction because a year-long delay between learning of infringement to suing, during which the parties exchanged letters and phone calls attempting to resolve the dispute, disproved an irreparable harm).

Here, the Motion should be denied first on the basis that Plaintiff waited almost a year to file it after he started communicating with Defendants regarding their perceived rule violations. The limited emails attached to Plaintiff's declaration do not provide sufficient justification for the delay. Further, Plaintiff has cited no cases in which courts have permitted such a delay. This delay

is fatal to the Plaintiff's Motion. Nonetheless, for the purposes of a complete record, the Court will also consider the specific irreparable harm claimed by Plaintiff in his Motion and Reply.

First, to the extent Plaintiff argues that "irreparable harm to the public itself – through suppression of competition – can independently justify injunctive relief," Plaintiff has not cited any law that supports this argument. The case relied on by Plaintiff—*Florida Businessmen for Free Enterprise v. City of Hollywood*, 648 F.2d 956, 958 (5th Cir. 1981)—is inapposite. In that case, the Fifth Circuit Court of Appeals granted the appellants' motion for stay and enjoined the enforcement of a local ordinance pending appeal regarding whether it violated appellants' First Amendment rights. Here, Plaintiff is broadly claiming that Defendants' actions are causing irreparable harm to the public through the suppression of competition. The Court finds that Plaintiff has not sufficiently alleged irreparable harm to the public, which requires the issuance of a preliminary injunction.

Second, Plaintiff alleges that an "injunction is essential to halt ongoing, irreparable harm that poisons the competitive process, deceives customers, and directly injures Plaintiff's business." [DE 8 at 14]. He explains that "[e]very instance in which Plaintiff loses a business opportunity enabled by the restraints, results in irreparable harm. In the real estate industry, a lost customer is not merely a temporary setback—it is a permanent loss." *Id.* at 15. Plaintiff claims that the harm is exponential because losing one client causes a loss in "potential referrals, word-of-mouth growth, and the reputational goodwill that brokers rely on to sustain and grow their businesses." *Id.* According to Plaintiff, "Defendants' conspiracy directly harms Plaintiff's ability to compete on the merits of his low-cost model, causing the loss of customers, reputation and market opportunities that cannot be remedied by money damages alone." *Id.* Plaintiff further claims that there is "irreparable harm to the public and the competitive process." *Id.* at 16. Thus, the ongoing

8

systemic harm to consumers and to the competitive process alone compels the issuance of a preliminary injunction." *Id.*

In sum, Plaintiff argues that he will suffer future harm in the form of loss of customers and goodwill if Defendants are permitted to continue to flout the NAR rules. He relies on *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005), in claiming this type of harm. The Eleventh Circuit in *Bellsouth Telecommunications* explained, "[a]lthough economic losses alone do not justify a preliminary injunction, 'the loss of customers and goodwill is an irreparable injury.'" 425 F.3d at 970 (citing *Ferrero v. Associated Materials Inc.,* 923 F.2d 1441, 1449 (11th Cir.1991)). In *BellSouth Telecommunications*, the Eleventh Circuit also explicitly found that the "record supports the finding of the district court that BellSouth was losing about 3200 customers per week under the previous regime." *Id.* at 970. Thus, in alleging irreparable damages in the form of future loss of customers and good will, the plaintiff in that case had specifically shown the number of customers it was losing. As other courts have noted, the finding of irreparable harm in *BellSouth Telecommunications* was, therefore, contingent on specific evidence showing how many customers would be lost. *See, e.g., Klein v. Oved*, No. 9:22-CV-80160-KAM, 2023 WL 7129942, at *2 (S.D. Fla. June 22, 2023) (distinguishing *Bellsouth Communications* since the plaintiffs before the district court in *Klein* had not sufficiently established a loss of customers or good will to justify the issuance of a preliminary injunction.).

Here, Plaintiff has failed to present any evidence whatsoever to support his contention that he will suffer future loss of customers and good will. Thus, even if he had timely filed his Motion, he has not established irreparable harm. *See Cap., L.P. v. Heyden Enters., LLC*, No. 23-cv-14248, 2024 WL 3738925, at *13 (S.D. Fla. July 19, 2024) (finding no irreparable harm where plaintiff failed to present "specific evidence to establish extensive loss of goodwill or loss of customers").

9

Plaintiff has not established irreparable harm for the reasons stated above. Because this required element has not been met, it is unnecessary to address the other requisite elements for a preliminary injunction.

## V.     CONCLUSION

In light of the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS** that Plaintiff Jorge A. Zea's Motion for Preliminary Injunction and Supporting Memorandum of Law to Compel Defendants' Compliance with Their Own Binding Rules [DE 8] be **DENIED** for the reasons stated in this Report and Recommendation.

### NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 14th day of 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge