UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81016-DIMITROULEAS/MATTHEWMAN

JORGE A. ZEA,

      Plaintiff,

v.

NATIONAL ASSOCIATION OF
REALTORS®, *et al.*,

      Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS [DE 60]**

**THIS CAUSE** is before the Court upon Defendants Connecticut Association of Realtors®, Inc. ("CT Realtors"), West and Southeast Realtors® of the Valley ("WeSERV"), and Smart MLS, Inc.'s ("Smart MLS") (collectively, "Defendants") Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens* ("Motion") [DE 60]. This matter was referred to the Undersigned Chief United States Magistrate Judge by the Honorable William P. Dimitrouleas, United States District Judge. *See* DE 14. The Motion is fully briefed and is ripe for review. *See* DEs 65, 66, 69.

**I.      BACKGROUND**

Plaintiff Jorge A. Zea, a realtor and licensed real estate broker proceeding *pro se*, filed a 122-page Complaint [DE 1] on August 15, 2025. He brought suit against several defendants, including Defendants, the National Association Realtors® ("NAR"), and various listing services and realtor associations. The Complaint alleges six counts, all based on antitrust violations brought under the Sherman Act, 15 U.S.C. § 1.

In the Complaint, Plaintiff alleges that CT Realtors "is a non-stock corporation organized under the laws of the State of Connecticut," with its principal place of business located in East Hartford, Connecticut. [Compl. ¶ 42]. He alleges that Smart MLS is a "non-stock corporation organized under the laws of the State of Connecticut," with its principal place of business located in Milford, Connecticut. *Id.* ¶ 43. Further, the Complaint alleges that WeSERV is a "non-profit corporation organized under the laws of the State of Arizona," with its principal place of business in Chandler, Arizona. *Id.* ¶ 45.

Plaintiff summarily alleges that this Court has "personal jurisdiction over all Defendants" since they all "participate in, enforce, or benefit from a coordinated framework of mandatory rules, policies, and compliance structures that collectively restrain trade and distort market competition." [Compl. ¶ 12]. He further alleges that "[s]ome Defendants operate directly within Florida's residential and real estate market. Others, though based outside Florida, have purposefully directed conduct at Plaintiff through service, rulemaking, communications, and regulatory proceedings that materially affected Plaintiff's business in this District." *Id.* ¶ 13. The Complaint additionally states:

> Defendant West and Southwest Realtors® of the Valley, Inc. ("WeSERV") is subject to specific personal jurisdiction in Florida because it committed an intentional act expressly aimed at this state, knowing harm would be felt here. Based in Arizona and lacking direct market overlap with Plaintiff, WeSERV nonetheless unilaterally assumed jurisdiction over an ethics complaint against Plaintiff, a known Florida resident. The brunt of the injury from this extraterritorial adjudication was necessarily felt in Florida. This conduct demonstrates purposeful availment, satisfies the minimum contacts requirement, and evidences WeSERV's participation in a nationwide conspiracy, making jurisdiction in this District both constitutional and proper.

*Id.* ¶ 14.

Finally, the Complaint states in relevant part:

Significantly, Arizona-based WeSERV, a Defendant, responsible for enforcement of the NAR's Code of Ethics upon its Arizona members; with no geographic overlap or service or membership relation with Plaintiff, voluntarily intervened in

a Connecticut ethics matter involving no Arizona parties. This conduct illustrates that REALTOR® associations do not operate as siloed, local entities, but as components of a coordinated, nationwide system with shared enforcement and governance mechanisms.

*Id.* ¶ 82.

## II.   MOTION, RESPONSE, AND REPLY

### A.   Defendants' Motion [DE 60]

Defendants move for dismissal of Plaintiff's Complaint against WeSERV, CT Realtors, and Smart MLS for both lack of personal jurisdiction and under a *forum non conveniens* theory. [DE 60 at 1]. Defendants claim that they have no connection to Florida whatsoever, and that the allegations about their alleged involvement in a conspiracy are "vague and fail to adequately establish personal jurisdiction." *Id.* According to Defendants, the ethics matters alluded to in the Complaint "were isolated resolutions of ethics complaints, both of which Plaintiff lodged *in Connecticut* against *Connecticut* real estate professionals, regarding property listed for sale *in Connecticut.*" *Id.* Further, "[o]ne of these matters was transferred for adjudication to WeSERV *in Arizona*, while the other was resolved by CT [Realtors] *in Connecticut.*" *Id.* And, as to Smart MLS, the Complaint only makes one factual allegation—that it had not yet adopted a version of the IDX display rule. *Id.* at 2 (citing Compl. ¶¶ 247 n.36, 268–72). Defendants have attached three declarations to their Motion. [DEs 60-1, 60-2, 60-3].

### B.   Plaintiff's Response [DE 65]

Plaintiff first argues that Defendants have purposely availed themselves of this forum through their litigation conduct by sharing counsel with other defendants in this case and joining with them in filing a 12(b)(6) motion to dismiss. [DE 65 at 4]. Second, Plaintiff contends that he has complied with the Florida long-arm statute since Smart MLS knowingly maintains Plaintiff's active membership with a Florida-registered address, and its rules, policies, and procedures

"directly govern Plaintiff's individual rights, duties, and access to MLS data." *Id.* at 5–6. In other words, Smart MLS directs policies at a Florida resident and carries on a business with direct effects on Florida commerce. *Id.* Third, Plaintiff asserts that Smart MLS's actions "were neither accidental nor isolated" and caused harm in Florida, not just in Connecticut. *Id.* at 6. Next, he alleges that Defendants CT Realtors and WeSERV are voting members of NAR's national government structure, so they could "reasonably anticipate that their collective actions would cause effects in any state where NAR members operate, including Florida." *Id.* Plaintiff makes several other arguments as to personal jurisdiction, which will be discussed further below. *Id.* at 7–11. Finally, Plaintiff claims that the forum selection clause is not authenticated or admissible, is permissive at best, and is unconscionable. *Id.* at 11–16. Plaintiff has also filed his own declaration [DE 66].

C.      Defendants' Reply [DE 69]

In reply, Defendants oppose each of Plaintiff's arguments in the Response. Defendants' arguments will be further discussed below.

### III.    APPLICABLE LAW AND ANALYSIS AS TO PERSONAL JURISDICTION

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of [personal] jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict." *Damian v. Int'l Metals Trading & Invs., Ltd.*, 243 F. Supp. 3d 1308, 1312 (S.D. Fla. 2017) (quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Sarmiento Lopez v.*

4

*CMI Leisure Mgmt., Inc.*, 591 F. Supp. 3d 1232, 1236 (S.D. Fla. 2022) (quoting *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014)). In this regard, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant''s affidavits or deposition testimony." *Damian*, 243 F. Supp. 3d at 1312. However, "[a]s a general matter, when jurisdictional facts are inextricably intertwined with underlying claims, the proper course is to resolve the issue by proceeding on the merits." *Nissim Corp. v. ClearPlay, Inc.*, 351 F. Supp. 2d 1343, 1351 (S.D. Fla. 2004) (quoting *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 609 n.2 (E.D. Va. 2002)).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274 (internal citations omitted). As to the first step, "[t]he reach of the Florida long-arm statute is a question of Florida law. Thus, [f]ederal courts are required to construe such law as would the Florida Supreme Court[,] and [a]bsent some indication that the Florida Supreme Court would hold otherwise, federal courts are bound to adhere to decisions of Florida's intermediate courts." *Id.* at 1274–75 (original alterations omitted) (citing *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1271 (11th Cir. 2002)). With respect to the second step, "[f]ederal law applies to determine whether assertion of jurisdiction over [a] defendant comports with due process." *Green v. USF & G Corp.*, 772 F. Supp. 1258, 1262 (S.D. Fla. 1991).

As an initial matter, the Court rejects Plaintiff's argument that Defendants' litigation conduct in this case confers personal jurisdiction over Defendants. Defendants retained counsel in this district because they were sued here. And, they filed a motion to dismiss under Rule 12(b)(6)

[DE 59] at the same time as the pending Motion, which is permitted by the Federal Rules of Civil Procedure. This conduct in no way amounts to purposeful availment of the forum state. And, Plaintiff has not cited any cases that supports his argument.

A. Florida's Long-Arm Statute

i. General Jurisdiction under Section 48.193(2), Florida Statutes

Plaintiff "concedes the conception of General Jurisdiction is not relevant in this particular case." [DE 65]. The Court agrees and adopts Defendants' arguments on this issue as discussed in the Motion [DE 60].

ii. Personal Jurisdiction under Section 48.193(1), Florida Statutes

Section 48.193(1)(a), Florida Statutes, confers jurisdiction where the cause of action "aris[es] from" the specified acts. Plaintiff specifically contends that the Court has personal jurisdiction over Defendants under sections 48.193(1)(a)(1) and (1)(a)(2), Florida Statutes.

a. Section 48.193(1)(a)(1)

A court has personal jurisdiction over defendants under section 48.193(1)(a)(1), Florida Statutes, when defendants have been "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). "Factors relevant to this inquiry include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.'" *Stone v. Shafran*, 641 F. Supp. 3d 1344, 1358 (S.D. Fla. 2022) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)). "A *business venture*, on the other hand, 'can consist of a single project or transaction.'" *Stone*, 641 F.

6

Supp. 3d at 1358 (citing *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.*, 766 So. 2d 1163, 1165 (Fla. 3d DCA 2000)).

In their Motion, Defendants argue that, "[n]owhere in the Complaint does Plaintiff allege that his claims arose from the Defendants' connection with Florida, or, indeed that CT Realtors, [WeSERV], or Smart MLS has 'conducted' or 'carried on' business in this state. In fact, Plaintiff pleads the opposite …." [DE 60 at 7].

In response, Plaintiff claims that he has established specific jurisdiction under this subsection in the following ways: (1) Smart MLS "knowingly maintains Plaintiff's active membership with a Florida registered address" and its "rules, policies, and IDX procedures directly govern Plaintiff's individual rights, duties, and access to MLS data—core elements of Plaintiff's professional activity in Florida"; (2) "Defendants CT [Realtors] and WeSERV could reasonably anticipate their collective actions would cause effects in any state where NAR members operated, including Florida"; and (3) "by hearing and issuing dispositive decisions on ethics complaints brought before these associations, Defendants have further availed themselves of this forum by directly affecting a Florida resident through their collective disciplinary actions." [DE 65 at 5–7].

In reply, Defendants point out that their "conduct giving rise to this action occurred in Connecticut and impacted Plaintiff only because he conducted business in Connecticut. While Plaintiff lives in Florida, he also conducts and operates a real estate business in Connecticut." [DE 69 at 3]. In other words, "[i]t is Plaintiff who left Florida and directed his actions towards Connecticut to interact with Defendants." *Id.* Defendants argue that the two ethics matters mentioned in the Complaint "are also Connecticut matters that do not target anyone other than REALTORS® in Connecticut" and "[t]he ethics proceedings did not target Plaintiff in Florida, nor direct any conduct towards Florida." *Id.* at 4.

Here, Plaintiff has not sufficiently alleged, and cannot allege with any specificity, that Defendants operate, conduct, engage in, or carry on a business or business venture in Florida or have an office or agency in this state. *See* Decl. of Cynthia Butts, DE 60-1 ¶¶ 2–5; Decl. of Roger Nelson, DE 60-2 ¶¶ 2–5; Decl. of Kathy Elson, DE 60-3 ¶¶ 2–7. Defendants are correct that Plaintiff is only affected by their rules, policies, and IDX procedures, as well as by the ethical proceedings described in the Complaint, because Plaintiff chooses to conduct business in Connecticut.[1] Further, it is clear that the ethics proceedings alluded to in the Complaint did not target Plaintiff in Florida or direct any conduct towards Florida. *See* Dec. of Cynthia Butts, DE 60-1 ¶¶ 6–13; Dec. of Roger Nelson, DE 60-2 ¶¶ 6–9.

### b.   Section 48.193(1)(a)(2)

Plaintiff further argues that there is personal jurisdiction over Defendants here based on section 48.193(1)(a)(2), Florida Statutes. Section 48.193(1)(a)(2) confers jurisdiction over defendants who have "[c]omit[ed] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). The Florida Supreme Court has clarified that physical presence is not required to "commit a tortious act" within Florida. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). "This provision of Florida's long-arm statute 'permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state.'" *Hicks v. Bombardier Recreational Prods. Inc.*, 684 F. Supp. 3d 1223, 1237 (S.D. Fla. 2023) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) ("[U]nder Florida law, a nonresident defendant commits a tortious act within

---

[1] To be clear, while WeSERV is an Arizona non-profit corporation, the Complaint alleges that, in October 2024, a representative from CT Realtors requested that WeSERV "adjudicate an ethics complaint and hearing submitted by Mr. Zea against a Connecticut-based real estate agent." The property at issue in the complaint was located in Connecticut, and neither Plaintiff nor the agent was a member of WeSERV. Decl. of Roger Nelson, DE 60-2 ¶¶ 7–9.

Florida when he commits an act *outside* the state that causes injury within Florida.") (internal citations omitted).

Plaintiff claims that Smart MLS's "decisions—particularly its coordinated non-enforcement of rules designated to prevent anticompetitive conduct—caused harm here in Florida, not in Connecticut." [DE 65 at 6]. According to Plaintiff, "[j]urisdiction therefore attaches under § 48.193(1)(a)(2), which extends to any nonresident who commits a tortious act outside the state that causes injury within Florida." *Id.* Plaintiff also claims that the "coordinated conduct" of CT Realtors and WeSERV injured "a Florida resident in Florida" and that "it is entirely foreseeable that the injury would be felt here and that jurisdiction would lie here." *Id.* Defendants reply that, "Plaintiff cannot suffer an alleged injury in Connecticut and then claim the injury was suffered in Florida. Plaintiff's interactions with the Defendants occurred in Connecticut and involve Plaintiff's contacts with Connecticut." [DE 69 at 5]. Further, "[t]he fact that Plaintiff resides in Florida and claims that a continuing injury is suffered there upon his return (Opp. 6–7) does not establish personal jurisdiction over the Defendants." *Id.*

In the Complaint, Plaintiff alleges that this Court has "personal jurisdiction over all Defendants" since they all "participate in, enforce, or benefit from a coordinated framework of mandatory rules, policies, and compliance structures that collectively restrain trade and distort market competition." [Compl. ¶ 12]. He does not distinguish between the various defendants. He further alleges that "[s]ome Defendants operate directly within Florida's residential and real estate market. Others, through based outside Florida, have purposefully directed conduct at Plaintiff through service, rulemaking, communications, and regulatory proceedings that materially affected Plaintiff's business in this District." *Id.* ¶ 13. Again, Plaintiff broadly refers to all of the defendants in the case without distinguishing between them. The Complaint further discusses two ethical

9

matters, alleging that WeSERV "committed an intentional act expressly aimed at this state, knowing harm would be felt here" and "the brunt of the injury from this extraterritorial adjudication was necessarily felt in Florida." *Id.* ¶ 14. It is clear, based on both the allegations and Defendants' declarations, that any alleged tortious conduct on the part of Defendants and any alleged injury from the ethical proceedings to Plaintiff occurred in Connecticut. Even Plaintiff's argument in his Response that the "coordinated conduct" of CT Realtors and WeSERV injured "a Florida resident in Florida" does not sufficiently establish personal jurisdiction since, again, Plaintiff availed himself of a relationship with Defendants by conducting business in Connecticut and then allegedly suffered an injury there. Further, Plaintiff's vague and overbroad allegations about the coordinated conduct of Defendants are insufficient to support personal jurisdiction over Defendants.

### B.   The Due Process Clause

Even though no personal jurisdiction exists here under Florida's long-arm statute, the Court will analyze the due process considerations to ensure a complete record. Jurisdiction over a nonresident defendant must still comport with the Due Process Clause of the Fourteenth Amendment. *See United Techs. Corp.*, 556 F.3d at 1274. "In specific personal jurisdiction cases, [courts] apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Mosseri*, 736 F.3d at 1355 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,472–73, 474–75 (1985)). The plaintiff bears the burden of satisfying the first two prongs. *Id.* If the

plaintiff is able to do so, the defendant must then show that the exercise of personal jurisdiction would "violate traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). "Because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a forum where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 2025 WL 1637952, at *17 (11th Cir. June 10, 2025).

Plaintiff argues that Defendants "deliberately established continuing obligations with Florida through intentional, non-random conduct." [DE 65 at 8]. Specifically, Smart MLS "knowingly maintains Plaintiff's Florida-registered individual membership and applies rules that govern his personal operations here," and CT Realtors and WeSERV "actively participate in NAR's national rulemaking and enforcement structure, voting on the very policies that dictate how Smart MLS and other MLSs must treat Florida brokers." *Id*. Plaintiff further asserts that the burden on Defendants is minimal and self-imposed, Florida's interest is paramount, and "[s]plitting this single antitrust conspiracy case into multiple forums would be the height of inefficiency." *Id.* at 9.

In light of the record evidence and the allegations in the Complaint, the Court finds that Plaintiff's claims do not 'arise out of or relate to' at least one of Defendants' contacts with Florida, Defendants have not purposely availed themselves of the privilege of conducting activities within Florida, thus invoking the benefit of the forum state's laws, and the exercise of personal jurisdiction here would not comport with traditional notions of fair play and substantial justice. Plaintiff's arguments to the contrary do not hold water. As sated above, the allegations in the

Complaint related to personal jurisdiction are overly vague as they pertain to Defendants. Further, Plaintiff chose to become a member of Smart MLS.

### C.   The Clayton Act

In the Complaint, Plaintiff also cites to 15 U.S.C. § 22 [Compl. ¶¶ 10-11], which is the provision of the Clayton Act that provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. In their papers, Plaintiff and Defendants both cite *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948), which found, for purposes of the statute, that the "practical, everyday business or commercial concept of doing or carrying on business of any substantial character became the test of venue." (internal citation omitted).

Plaintiff claims that Defendants "all transact business of substantial character within the meaning of § 22" as "[e]ach participates in a national enterprise governed by uniform rules promulgated by NAR." [DE 65 at 10]. He argues that Defendants' "conduct is not peripheral to this District; it regulates and materially impacts the daily business of Plaintiff." *Id.* at 11. Further, he states that the "breadth of Defendants' coordinated activity does not defeat jurisdiction—it confirms it." *Id.* Defendants respond that Plaintiff misunderstands the standard since the Clayton Act "does not permit jurisdiction to anyone who engages in business anywhere[,] but rather jurisdiction is appropriate only where the defendant transacts business in that district." [DE 69 at 8]. Defendants further note that, "even according to Plaintiff's Complaint, Defendants do not transact business in Florida. Compl. ¶¶ 42–43, 45, 81–82 (alleging that Defendants [ ] conduct business in Arizona and Connecticut only)." *Id.*

The Court has carefully reviewed the Complaint and the parties' arguments and finds that there is no personal jurisdiction over Defendants pursuant to 15 U.S.C. § 22. The Complaint does not allege that Defendants, specifically and as opposed to other defendants in this case, conduct practical, everyday business or do business or carry on business of any substantial character in Florida.

### IV.   <u>CONCLUSION</u>

As there is no personal jurisdiction over Defendants here, the Court need not analyze the *forum non conveniens* arguments. In light of the foregoing, the undersigned Chief United States Magistrate Judge **RECOMMENDS** that Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens* [DE 60] be **GRANTED**.

### <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William P. Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 20th day of February 2026.

WILLIAM MATTHEWMAN
Chief United States Magistrate Judge