# Exhibit 1

# EXHIBIT 1

## CASES AND LITERATURE

### A. Federal Government Enforcement

1.  *United States v. Nat'l Ass'n of Real Est. Bds.*, 339 U.S. 485 (1950).

2.  *United States v. Prince George's Cnty. Bd. of Realtors*, No. 21545 (D. Md. Dec. 28, 1970).

3.  *United States v. Long Island Bd. of Realtors,* No. 70-cv-01418 (E.D.N.Y. Aug. 1, 1972).

4.  *United States v. L.A. Realty Bd.,* No. CIV. A. 70-2855, 1973 WL 767 (C.D. Cal. Mar. 19, 1973)

5.  *United States v. Metro MLS, Inc.*, No. 210-73-N (E.D. Va. Aug. 5, 1974).

6.  *United States v. Multiple Listing Serv. of Hilton Head Island, Inc.*, No. 9:07-cv-03435 (D.S.C. May 28, 2008).

7.  *United States v. Consolidated Multiple Listing Serv.*, No. 3:08-cv-01786 (D.S.C. Sept. 24, 2009).

8.  *United States v. Nat'l Ass'n of Realtors*, No. 1:05-cv-05140 (N.D. Ill. Nov. 18, 2008).

9.  *United States v. Nat'l Ass'n of Realtors*, No. 1:20-cv-03356 (D.D.C. filed Nov. 19, 2020).

### B. Federal Trade Commission

1.  J. Gerard Butters, Fed. Trade Comm'n, The Residential Real Estate Brokerage Industry, 8–11 F.T.C. (1983). Available at: https://www.ftc.gov/system/files/ftc_gov/pdf/The-Residential-Real-Estate-Brokerage-Report--Butters-Report.pdf

2.  Fed. Trade Comm'n & U.S. Dep't of Justice, *Competition in the Real EstateBrokerage Industry* (April 2007) Available at: https://www.justice.gov/sites/default/files/atr/legacy/2007/05/08/223094.pdf

3.  *FTC v. Realcomp II Ltd.*, 635 F.3d 815 (6th Cir. 2011).

2

4. Fed. Trade Comm'n & U.S. Dep't of Justice, *Joint Public Workshop: What's New in Residential Real Estate Brokerage Competition* (June 5, 2018) Available at: https://www.ftc.gov/news-events/events/2018/06/whats-new-residential-real-estate-brokerage-competition-ftc-doj-workshop

## C. United States Statements of Interest in Private Litigation

1. Statement of Interest of the United States, *Nosalek v. MLS Property Information Network*, No. 1:20-cv-12244-PBS, Doc. 290 (D. Mass. Feb. 15, 2024)

2. Statement of Interest of the United States, *Burnett v. Nat'l Ass'n of Realtors,* No. 4:19-cv-00332-SRB, Doc. 1603 (W.D. Mo. Nov. 24, 2024)

3. Statement of Interest of the United States, *Davis v. Hanna Holdings, Inc.*, No. 2:24-cv-02374-WB, Doc. 115 (E.D. Pa. Dec. 19, 2025)

4. Statement of Interest of the United States, *Moehrl v. Nat'l Ass'n of Realtors,* No. 1:19-cv-01610, Doc. 140 (N.D. Ill. Oct. 11, 2019)

## D. DOJ Amicus Curiae

1. Brief of the United States as Amicus Curiae, *Tan v. Nat'l Ass'n of Realtors*, No. 21-16494, DktEntry 21 (9th Cir. Mar. 13, 2023)

## E. Private Litigation

1. *Burnett v. Nat'l Ass'n of Realtors,* No. 4:19-cv-00332 (W.D. Mo. Oct. 31, 2023)

2. *Moehrl v. Nat'l Ass'n of Realtors,* 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023)

3. *REX — Real Estate Exchange, Inc. v. Nat'l Ass'n of Realtors*, No. 2:21-cv-00312-TSZ (W.D. Wash.)

4. *The PLS.com, LLC v. Nat'l Ass'n of Realtors,* No. 2:25-cv-05971 (C.D. Cal. July 28, 2025)

5. *Gibson v. Nat'l Ass'n of Realtors,* No. 4:23-cv-00788 (W.D. Mo. filed Oct. 31, 2023)

3

6. *Nosalek v. MLS Prop. Info. Network, Inc.*, No. 1:20-cv-12244 (D. Mass. filed Dec. 17, 2020)

7. *March v. Nat'l Ass'n of Realtors,* No. 3:23-cv-01585 (D. Conn. filed Dec. 5, 2023).

8. *Spring Way Ctr., LLC v. West Penn Multi-List, Inc.*, No. 2:23-cv-02061 (W.D. Pa. filed Dec. 4, 2023).

9. *Lederer v. Nat'l Ass'n of Realtors,* No. 1:24-cv-00363 (S.D.N.Y. filed Jan. 17, 2024).

10. *Batton v. Nat'l Ass'n of Realtors,* No. 1:21-cv-00430 (N.D. Ill. filed Jan. 25, 2021)

11. *Taylor v. Zillow, Inc.*, No. 2:25-cv-01818 (W.D. Wash. filed Sept. 19, 2025)

12. *Spring Way Center v. West Penn Multi-List*, No. 23-cv-2061 (W.D. Pa.), Dkt. 30 ¶

13. *Latham v. MetroList Services,* No. 24-cv-0067 (E.D. Cal.), Dkt. 1 ¶ 94

## G. Empirical Studies and Scholarly Analysis

1. Barry, Fried & Hatfield, *Et Tu, Agent? Commission-Based Steering in Residential Real Estate*, USC Center for Law and Social Science Research Paper No. 24-7 (Jan. 2024), published in CPI Antitrust Chronicle (Mar. 2024). Available at: https://ilr.law.uiowa.edu/sites/ilr.law.uiowa.edu/files/2025-05/ILR-110-Barry.pdf

2. Barwick, Pathak & Wong, *Conflicts of Interest and Steering in Residential Brokerage*, 9 Am. Econ. J.: Applied Econ. 191 (2017)

3. Hsieh & Moretti, *Can Free Entry Be Inefficient? Fixed Commissions and Social Waste in the* Real *Estate Industry*, NBER Working Paper No. 9208 (Sept. 2002), published in 111 J. Pol. Econ. 1076 (2003). https://eml.berkeley.edu/~moretti/real-estate19.pdf

4. Banerjee & Paciorek, *Commissions and Omissions: Trends in Real Estate Broker Compensation,* FEDS Notes, Federal Reserve Board of Governors (May 12, 2025). Available at: https://www.federalreserve.gov/econres/notes/feds-notes/commissions-and-omissions-trends-in-real-estate-broker-compensation-20250512.html

5. Borys Grochulski & Zhu Wang, *Real Estate Commissions and Homebuying*, Federal Reserve Bank of Richmond Working Paper No. 24-01 (revised Dec. 2025). Available at: https://www.richmondfed.org/-/media/RichmondFedOrg/publications/research/working_papers/2024/wp24-01.pdf

4

6. Grochulski & Wang, *Two-Sided Platforms and the 6 Percent Real Estate Broker Commission,* Federal Reserve Bank of Richmond Working Paper WP 25-05 (June 23, 2025). Available at: https://www.richmondfed.org/-/media/RichmondFedOrg/publications/research/working_papers/2025/wp25-05.pdf

7. Borys Grochulski & Zhu Wang, *How Exclusive Homebuyer Representation Contracts Help Keep Commissions High,* Fed. Res. Bank of Richmond Econ. Brief No. 25-35 (Sept. 2025). Available at: https://www.richmondfed.org/publications/research/economic_brief/2025/eb_25-35

8. U.S. Dep't of Justice, Antitrust Div., *Chronology of Realtor Association Violations,* https://www.justice.gov/archives/atr/chronology-realtor-association-violations (last visited May 26, 2026).

9. Mark S. Nadel, *Obstacles to Price Competition in the Residential Real Estate Brokerage Market,* 18 Berkeley Bus. L.J. 90 (2021). Available at: https://www.antitrustinstitute.org/wp-content/uploads/2021/02/BBLJ-ONLINE-Nadel-.pdf

10. Special Report: *Why the Real Estate Industry Does Not Compete on Commission Rates,* Inman News (Nov. 24, 2014), Available at https://www.inman.com/2014/11/24/special-report-why-the-real-estate-industry-does-not-compete-on-commission-rates/

# Exhibit 2

**Form #E-11**

## Central Panhandle Association of REALTORS®
### 4952 W Hwy 98 Panama City, FL 32401

### Decision of Ethics Hearing Panel
### of the Professional Standards Committee

Filed __February 28th__ , 20 __24__

__Jorge Zea__

__Hope Abbott__

__Andrew Smith__

| Complainant(s) | Respondent(s) |
|---|---|

**Findings of fact:** The hearing panel finds the following facts in support of its conclusion regarding the alleged violations of the Code of Ethics:

See attached documents

**Conclusions of the hearing panel:** We, the members of the Hearing Panel in the above-stated case, find the   Respondent(s) ☐ in violation ☑ not in violation of Article(s) __1 and 3__ of the Code of Ethics.

**Prior violations, if any:**

**Recommendation for disciplinary action, if any, if violation found, including time frame in which discipline must be complied with:** We recommend to the Board of Directors the following action:

**Rationale for discipline, if any, if violation found:** (e.g., previous violations):

The hearing panel agreed that this sanction is appropriate considering the allegations that were made.

**Consequences for noncompliance with discipline:**

*Code of Ethics and Arbitration Manual*

The decision, findings of fact, and recommendation(s) preceding were rendered by an ethics Hearing Panel comprising the following members whose signatures are affixed below. The hearing took place on February 28th _____, 20 25 _____.

**Trudy VanHorn** _____, Chairperson
Type/Print Name

**Mike Alvis** _____, Member
Type/Print Name

**Darren Haiman** _____, Member
Type/Print Name

**Susan West** _____, Member
Type/Print Name

**Jessica Albritton** _____, Member
Type/Print Name

**Notice:** This decision is not final and is subject to certain rights of both the complainant and the respondent.

**Complainant's rights:** Within twenty (20) days of transmittal of this notification, the complainant may file an appeal with the President for a hearing before the Directors based only upon an allegation of procedural deficiencies or other lack of procedural due process that may have deprived the complainant of a fair hearing. A transcript or summary of the hearing shall be presented to the Directors by the Chairperson of the Hearing Panel, and the parties and their counsel may be heard to correct the summary or the transcript. No new evidence will be received (except such new evidence as may bear upon a claim of deprivation of due process), and the appeal will be decided on the transcript or summary. Any appeal must be accompanied with a deposit of $500.*

**Respondent's rights:** Within twenty (20) days of transmittal of this notification the respondent may file an appeal with the President for a hearing before the Directors challenging the decision and/or recommendation for discipline. The respondent's bases for appeal are limited to (1) a misapplication or misinterpretation of an Article(s) of the Code of Ethics, (2) procedural deficiency or any lack of procedural due process, and (3) the discipline recommended by the Hearing Panel. A transcript or summary of the hearing shall be presented to the Directors by the Chairperson of the Hearing Panel, and the parties and their counsel may be heard to correct the summary or transcript. No new evidence will be received (except such new evidence as may bear upon a claim of deprivation of due process), and the appeal will be decided on the transcript or summary. Any appeal must be accompanied with a deposit of   $500*

**Final action by directors:** Both the complainant and respondent will be notified upon final action of the Directors.

NOTE TO HEARING PANEL: Respondents may only be found in violation of Articles they have been formally charged with having violated. If the respondent is found in violation, the Hearing Panel will consider all records of previous violations and sanctions imposed, whether by the current or by any other Association, when determining discipline and the rationale for the current action can be provided to the parties and the Directors as part of the decision. The Hearing Panel's consideration will include whether prior disciplinary matters involve discipline that was held in abeyance and that will be triggered by a subsequent violation (including the matter currently under consideration by the Hearing Panel).

Hearing Panels that find a matter not timely filed should transmit their decision via correspondence (not Form #E-11, Decision of Ethics Hearing Panel of the Professional Standards Committee). Appellants appealing a Hearing Panel's dismissal should use Form #E-22, Appeal of Grievance Committee (or Hearing Panel) Dismissal of Ethics Complaint.

*Fee not to exceed $500.

*(Revised 11/16)*
*Code of Ethics and Arbitration Manual*

The Professional Standards Committee convened to review a complaint alleging a violation of Articles 1 and 3 of the Code of Ethics. The complainant, a listing agent, asserted that the respondent's assistant declined to show a property after learning that no buyer compensation was being offered, raising concerns about potential steering. The respondent, a buyer's agent, presented evidence demonstrating that their communication with the complainant was based on instructions from their client. Specifically, the respondent provided a Buyer's Broker Agreement, which explicitly stated in the additional terms that the buyer had instructed their agent not to pursue properties without cooperative compensation.

After careful deliberation and review of the evidence, the panel concluded that the respondent had acted in accordance with their client's documented instructions and did not violate Articles 1 or 3. The agreement clarified that the buyer's decision, not the agent's personal judgment, guided the interaction. While no ethical violation was found, the panel found it necessary to emphasize the importance of clear and professional communication regarding compensation discussions. As a result, the panel issued the attached advisory letter to the respondent, reinforcing best practices in discussing commission structures to prevent any appearance of improper influence over a buyer's choices.

9



**Central Panhandle Association of Realtors®**

Dear Ms. Abbott and Mr. Smith,

Following the recent Professional Standards Committee hearing, the panel has carefully reviewed the case concerning alleged violations of Article 1 and Article 3 of the Code of Ethics. After thorough consideration of the evidence presented, the panel did not find sufficient grounds to support a violation of either Article.

However, the panel finds it necessary to emphasize to Ms. Abbott the importance of precise and professional communication, particularly when discussing commissions with other agents. In light of recent litigation involving the National Association of REALTORS® (NAR), it is imperative that such discussions be approached with clarity and a strong commitment to ethical practices.

When engaging in conversations regarding offers of compensation, it is crucial to ensure that discussions remain focused on the needs and desires of the client. Any indication that an agent is guiding a client away from certain properties based on compensation structures could be perceived as steering, which is strictly prohibited. Transparency and diligence in these conversations help maintain public trust and uphold the integrity of the profession.
We appreciate your cooperation and commitment to ethical real estate practices. If you have any questions or require further clarification, please do not hesitate to reach out.

Trudy VanHorn, Chairman

Kaydee Albritton, CEO